**In the Interest of J.J.S., JR., Minor Child,**

**J.J.S., Sr., Father, Appellant.**

No. 00–1111.

Court of Appeals of Iowa.

March 14, 2001.

Mona Knoll and Richard L. Pazdernik, Jr. of Nazette, Marner, Wendt, Knoll & Usher, L.L.P., Cedar Rapids, for appellant.

Thomas J. Miller, Attorney General, Gordon Allen and Kathrine S. Miller-Todd, Assistant Attorney Generals, and Susan Conn, Assistant County Attorney, for appellee-State.

H. Nick Gloe of Faches, Gloe & Quint, Cedar Rapids, guardian ad litem for minor child.

Heard by STREIT, P.J., and HECHT and VAITHESWARAN, JJ.

HECHT, Judge.

Joe, Sr. appeals the juvenile court's termination of his parental rights with respect to his son, Joe, Jr. He contends the court erred in reopening and reconsidering the record and in admitting new evidence after it issued a ruling dismissing the State's petition to terminate his parental rights. He claims even if the court did not err in reconsidering the termination of parental rights issue, there was not clear and convincing evidence presented during the first and second trial that Joe, Jr. could not be returned to his custody. We reverse and remand to the juvenile court.

**I. Factual Background and Proceedings.** Joe, Sr. and Makina S. are the parents of Joe, Jr., who was born on September 26, 1994. In March of 1995, during a visit to the hospital, it was discovered the child had several fractured bones. The Department of Human Services ("DHS") removed him from his parents' care on March 6, 1995, and placed him in foster care. The child was adjudicated to be a child in need of assistance on March 13, 1995. DHS offered services to both parents, including visitation with Joe, Jr. Joe, Sr. regularly participated in both visitation and services, but Makina did not. The State filed a petition to terminate both parents' rights on December 1, 1995. The juvenile court held several days of hearings on the matter. On June 28, 1996, the juvenile court continued the case for ninety days to give the parents another chance to show they could appropriately parent their child. On April 3, 1997, the juvenile court dismissed the State's petition to terminate Joe, Sr.'s parental rights. On June 2, 1997, the juvenile court terminated Makina's parental rights. Her rights are not at issue in this appeal.

After the court terminated Makina's rights, Joe, Jr. remained in foster care. During this time, Joe, Sr. was making progress completing the tasks listed in the permanency plan designed to enable the child to move back into his home. On November 19, 1997, the child was returned to his father's full time care after Joe, Sr. had addressed most of DHS's concerns regarding his ability to parent. However, on March 8, 1998, DHS received a child

abuse report indicating Joe, Sr. left Joe, Jr. and two other children unsupervised for a short time in his apartment with candles burning and returned to the apartment intoxicated. The juvenile court ordered Joe, Jr. be removed from his father and returned to foster care. Joe, Sr. admitted he had a problem with the use of alcohol and began substance abuse treatment on March 16, 1998. He completed the treatment program at the end of June, 1998. As part of his continuing treatment program, it was recommended Joe, Sr. attend Alcoholic's Anonymous ("AA") twice a week and take Antabuse, a prescription drug which causes nausea and vomiting when taken with alcohol.

On October 26, 1998, the State filed a second petition to terminate Joe, Sr.'s parental rights. Before a hearing on the State's petition, all of the involved parties agreed to give Joe, Sr. another chance and formulated a list of five tasks he was to complete before the child could permanently return to his care. These tasks included enrolling Joe, Jr. in Head Start, attending AA meetings and obtaining a sponsor, taking Antabuse regularly, cooperating with service providers, and making the child available for speech therapy appointments. The child was placed in the temporary custody of his father during this time. In order for Joe, Jr. to be enrolled in the Head Start program, he was required to have a physical examination. For various reasons, Joe, Sr. failed to take his son in for a physical by March 17, 1999, and DHS removed the child from his care.

The juvenile court held a hearing on the State's petition to terminate Joe, Sr.'s parental rights on April 28 and June 22, 1999. On September 9, 1999, the juvenile court denied the State's petition to terminate Joe, Sr.'s parental rights and dismissed the action. On October 1, 1999, the State filed a "motion for reconsideration" alleging: (1) Joe, Sr. had not maintained suitable housing, was not attending AA meetings, and was not taking Antabuse; and (2) Joe, Jr.'s therapist indicated in a letter to DHS that he is at risk for attachment disorders and is a "high needs child" in immediate need of a permanent stable home. After a hearing on the State's motion, which the juvenile court treated as a motion to reopen the record on the State's petition to terminate parental rights, the motion was granted and an evidentiary hearing was scheduled.

At the subsequent hearing, the State presented evidence tending to prove certain developments which it claimed had occurred after the termination hearing in June, including Joe, Sr.'s failure to: (1) obtain suitable housing for himself and his son; (2) make arrangements for day care for the child during work hours; (3) take Antabuse during the past six months; (4) regularly attend AA meetings; and (5) avoid alcohol-related law violations. He was arrested on October 12, 1999, for operating while intoxicated, pled guilty to the charge, and was incarcerated in a "community based facility" at the time of hearing. The State also presented the testimony of the child's therapist regarding his behavior problems and special needs. On June 2, 2000, the juvenile court reversed its previous ruling and terminated Joe, Sr.'s parental rights with respect to his son. Joe, Sr. appeals the order.

**II. Standard of Review.** The standard of review in termination cases is de novo. *In re M.N.W.,* 577 N.W.2d 874, 875 (Iowa Ct.App.1998). The grounds for termination must be proven by clear and convincing evidence. *In re E.K.,* 568 N.W.2d 829, 830 (Iowa Ct.App.1997). Our primary concern is the best interests of the child; we look to both the child's long-range and immediate interests. *In re*

*M.T.,* 613 N.W.2d 690, 691 (Iowa Ct.App. 2000).

**III. The State's Motion for Reconsideration.** Although motions to reconsider are not expressly authorized in the Iowa Rules of Civil Procedure, they are recognized by case law. *See Iowa Elec. Light & Power Co. v. Lagle,* 430 N.W.2d 393, 396 (Iowa 1988). Motions to reconsider filed after a final judgment are often considered to be motions pursuant to Iowa Rule of Civil Procedure 179(b) if filed within ten days. *See Boughton v. McAllister,* 576 N.W.2d 94, 95 (Iowa 1998). Joe, Sr. argues if the State's motion for reconsideration was a motion pursuant to rule 179(b), it was not filed in a timely manner and the juvenile court erred by granting it. Rule 179(b) provides, in relevant part:

> On motion joined with or filed within the time allowed for a motion for new trial, the findings and conclusions may be enlarged or amended and the judgment or decree modified accordingly or a different judgment or decree substituted. But a party, on appeal, may challenge the sufficiency of the evidence to sustain any finding without having objected to it by such motion or otherwise.

Iowa R.Civ.P. 179(b). Such motions must be filed within ten days after the filing of the decision. *See* Iowa R.Civ.P. 247. In the present case, the State filed its motion twenty-two days after the final order declining to terminate Joe, Sr.'s rights and dismissing the petition.

The State argues on appeal although rule 179(b) motions apply to juvenile court proceedings, the ten-day time limit for filing the motions should not apply in order to preserve the informality of the proceedings. We agree with the State's assertion rule 179(b) motions may be utilized in termination proceedings. *See In re A.R.,* 316 N.W.2d 887, 889 (Iowa 1982). However, we find no authority for the proposition the ten-day time limit should not apply in such cases. In this situation, we must balance the policies behind recognizing informal procedural rules in juvenile court with the goal of promoting the child's best interests, including the goal of establishing permanency in the child's life. While we recognize the importance of the informal rules in juvenile court to further the goal of obtaining all information relevant to determining the best interests of a child, we do not subscribe to a rule that would indefinitely prolong a final decision regarding permanency. There must be a sense of finality to orders of the juvenile court to advance the best interests of the child. We conclude the time limit prescribed in rule 179(b) does apply in termination proceedings. The State's motion was untimely and the juvenile court erred by granting it and allowing the State to present additional evidence.

Even if the State's motion had been filed within ten days after the order dismissing the petition to terminate Joe, Sr.'s parental rights, we conclude the substance of the motion was not aligned with the purpose of rule 179(b). "Motions under rule 179(b) are permitted so that courts may enlarge or modify findings based on evidence already in the record. They are not vehicles for parties to retry issues based on new facts." *In re Marriage of Bolick,* 539 N.W.2d 357, 361 (Iowa 1995). In the body of its motion, the State clearly sought to present new evidence to the juvenile court regarding Joe, Sr.'s ability to be an appropriate parent to his son. The motion specifically alleged, "That since the hearing in June, Joe, Sr. has not obtained suitable housing and is still living in a warehouse, has not been attending AA meetings or taking antibuse [sic] as required in the Case Permanency Plan." In addition, a letter from Joe, Jr.'s therapist

relied upon by the State was dated September 28, 1999, nineteen days after the juvenile court issued its order dismissing the State's petition to terminate parental rights. In short, by its motion to reconsider, the State sought to relitigate the same issues presented in June to the juvenile court with new facts. Rule 179(b) does not authorize such relief.

The juvenile court treated the State's motion as a motion to reopen the record on the issue of the termination of Joe, Sr.'s parental rights. The State contends its motion was specifically contemplated or invited by the language of the juvenile court's September 9, 1999, order:

> In reaching these conclusions, this court has determined that it is necessary to expedite Joe, Jr.'s return to his father's care. This court has determined that, unless new evidence has occurred since June, 1999 that would mandate otherwise, Joe, Jr. can be returned to his father's care as soon as possible under DHS supervision, if appropriate, and released from the state of limbo in which he has languished for the past four years.

The State argues this language documents the juvenile court's intention to keep the record open for additional evidence bearing upon the petition to terminate Joe, Jr.'s parental rights. We reject this contention, however, because it is inconsistent with the court's ultimate disposition of the case–dismissal of the petition to terminate parental rights. We conclude instead the quoted language from the order addressed only the schedule for returning physical placement of the child to his father. This is a more logical interpretation of the court's order because, after dismissal of the petition, the juvenile court still had jurisdiction over placement of the child despite the fact it had lost jurisdiction over

the petition requesting termination of Joe, Sr.'s parental rights.

 Because the State's motion was filed after a final adjudication of the termination case, it cannot be considered a motion pursuant to rule 192 seeking to reopen the record. *See* Iowa R.Civ.P. 192 (allowing any party to offer further testimony before final submission of a case.) The State asserts our supreme court approved the reopening of the record in juvenile cases after final submission with the following language:

> The father also asserts that the trial court erred when it reopened the case and took additional testimony after the final submission.... In a trial to the court, the court has broad discretion to reopen the evidence; this court has said, "Such discretion is to be liberally exercised." *Dobler v. Bawden,* 238 Iowa 76, 85, 25 N.W.2d 866, 871 (1947). We find no abuse of discretion; the motion to reopen should have been granted. This is a juvenile case in which the best interests of the children dictate that the rules of procedure be liberally applied in order that all probative evidence might be admitted.

*In re J.R.H.,* 358 N.W.2d 311, 318 (Iowa 1984). We believe *J.R.H.* is distinguishable from the case presently before us. In *J.R.H.,* the juvenile court granted the motion to reopen the record during a dispositional phase of a CINA case. *Id.* at 316. The present case involves not merely a hearing as to the temporary custodial placement of the child with one parent or the other as in *J.R.H.;* it involves the rights of a parent to continue to exercise his right to parent his child. Considering the inherently more substantial rights at stake in termination proceedings, we conclude a juvenile court does not have the ability to reopen the record to receive additional evidence after a final adjudica-

tion on the merits of the termination petition. When additional evidence relevant to Joe, Sr.'s fitness as a parent came to light after the petition was dismissed on the merits, the appropriate procedure was not to seek to reopen the dismissed action, but rather to file a new petition alleging grounds for termination of parental rights.

In the alternative, the State argues the juvenile court correctly reopened the record based on newly discovered evidence. The State fails to identify a rule or other authority that would support such procedure. Iowa Rule of Civil Procedure 244 allows a party to seek a new trial on the ground material evidence was discovered which could not with reasonable diligence have been discovered and produced at trial. *See* Iowa R.Civ.P. 244(g); *Benson v. Richardson*, 537 N.W.2d 748, 762 (Iowa 1995). Under Iowa law, "newly discovered evidence" sufficient to merit a new trial is evidence which existed at the time of trial, but which, for excusable reasons, the party was unable to produce at the time. *Embassy Tower Care, Inc. v. Tweedy*, 516 N.W.2d 831, 833 (Iowa 1994). The State's motion clearly indicates it sought to present evidence that was not available at the time of the original trial on the issue of termination of Joe, Sr.'s rights. The State alleged the facts asserted in its motion occurred after the hearing in June. Accordingly, such evidence could not have formed the basis for a new trial under rule 244(g) because it was not in existence at the time of trial. Furthermore, if the State's motion is viewed as a rule 244(g) motion for new trial, it was untimely as motions for new trial must be filed within ten days after the filing of the decision. *See* Iowa R.Civ.P. 247. Thus, the juvenile court could not have properly granted a new trial pursuant to rule 244(g) under these circumstances[1].

IV. **Conclusion.** The State's motion for reconsideration was not filed within ten days of the juvenile court's decision and was therefore not timely pursuant to rule 179(b). Furthermore, the motion alleged new facts that occurred after dismissal of the petition to terminate Joe, Sr.'s parental rights. Under these circumstances, the State alleged a new claim for termination of the father's parental rights. We find no procedural rule or other authority supporting the State's contention it could reopen the dismissed action to present new evidence as though no final adjudication had occurred. Our decisions often address a child's need for timely finality in termination cases. We note parents also have an important interest in finality. Like other types of litigation, termination actions have a beginning and an end. They do not have an interminable existence such that, after trial and dismissal on the merits, they may thereafter be reopened at any time to present new evidence of post-trial or post-dismissal developments. The juvenile court erred in terminating Joe, Sr.'s parental rights after dismissal of the termination action based upon post-trial occurrences. Consequently, we reverse the juvenile court's order terminating Joe, Sr.'s parental rights and remand this case to the juvenile court for further proceedings consistent with this opinion. We express no opinion on the question of whether the post-trial or post-dismissal occurrences alleged by the State could constitute clear and convincing evidence that would support termination of Joe, Sr.'s parental rights if an action re-

1. We also note the State's motion cannot be viewed as a motion to modify the judgment pursuant to Iowa Rule of Civil Procedure 252. The State did not file a petition for relief and serve it upon Joe, Sr. with an original notice as contemplated by rule 253(b).

questing such relief is commenced following remand.

**REVERSED AND REMANDED.**