# IN THE COURT OF APPEALS OF IOWA

No. 14-1014
Filed October 1, 2014

**IN THE INTEREST OF J.S., J.S., and J.S.,**
**Minor Children,**

**O.S., Mother,**
     Appellant,

**B.S., Father,**
     Appellant.

_____

Appeal from the Iowa District Court for Scott County, Mark Fowler, District Associate Judge.

A father challenges orders adjudicating his son and two daughters as children in need of assistance. Both the father and mother contest the dispositional order placing the oldest child in foster care. **AFFIRMED.**

Carrie E. Coyle of Carrie E. Coyle, P.C., Davenport, for appellant-mother.

Tammy Westhoff Gentry of Parrish, Kruidenier, Dunn, Boles, Gribble & Gentry, L.L.P., Des Moines, for appellant-father.

Thomas J. Miller, Attorney General, Bruce Kempkes, Assistant Attorney General, Michael J. Walton, County Attorney, and Julie Walton, Assistant County Attorney, for appellee.

Timothy Tupper, Davenport, attorney and guardian ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**TABOR, J.**

More than four years after their divorce, the continued hostility between the parents involved in this appeal has resulted in emotional injury to their two teen-aged daughters Je.S. and Ja.S., as well as to their eleven-year-old son Ju.S. The juvenile court adjudicated the children in need of assistance (CINA) and directed the Iowa Department of Human Services (DHS) to assume custody of the oldest child for placement in foster care. The father appeals the CINA adjudications, and each parent argues separately Je.S. should be placed in his or her custody. We affirm the adjudicatory and dispositional orders based on our independent review of the juvenile court record.

This family came to the attention of the Iowa DHS in July 2013, when Je.S. was admitted to the adolescent psychiatric unit at the University of Iowa Hospitals after she attempted suicide by taking an overdose of ibuprofen. The doctor who treated Je.S. named both parents in a report of mental injury filed with the DHS. Je.S. told the doctor she was afraid of her father after an incident in March 2013 when he reportedly dragged her upstairs to her room and threw her on the bed. She then went to live with her mother, where she was subjected to verbal abuse and demoralizing criticisms. On the night of Je.S.'s overdose, the mother had presented her with a list of ways she had been a disappointment. Finding a correlation between the behavior of the parents and the daughter's mood and impairment, the doctor filed the report for mental injury. The doctor diagnosed Je.S. with major depressive disorder and adjustment disorder with anxiety.

The trouble extended to her two younger siblings. The middle child, Ja.S., also tried to commit suicide by overdosing on medication. Ja.S. has a diagnostic impression of adjustment disorder with depression and anxiety. Their younger brother, Ju.S., swallowed an empty bullet shell as a way of acting out. He has a diagnostic impression of adjustment disorder with anxiety. All three children have said their parents' acrimonious relationship led them to act as they did.

On November 25, 2013, the State filed a child in need of assistance (CINA) petition for all three children under Iowa Code sections 232.2(6)(b), (c)(1), (c)(2), (e), (f), and (n) (2013). The guardian ad litem and court appointed special advocate (CASA) also recommended adjudication. Following a hearing, the juvenile court adjudicated all three CINA under section 232.2(6)(c)(2).[1] The court found Je.S., Ja.S., and Ju.S. have suffered emotional distress and were likely to suffer additional harm due to the contentious, argumentative, and unhealthy relationship between their parents.

The father filed a pro se motion to amend or enlarge the juvenile court's ruling under Iowa Rule of Civil Procedure 1.904(2). In five pages, the father contended the court erred in finding he failed to provide proper supervision for the children. On June 10, 2014, the court issued an order reaffirming its adjudication under subparagraph (c)(2). The court also found the State had

---

[1] "The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child." Iowa Code § 232.2(6)(c)(2).

proved by clear and convincing evidence the children were CINA under subparagraph (c)(1). [2]

On appeal, the father argues the State failed to prove Je.S., Ja.S, and Ju.S. were CINA under Iowa Code sections 232.2(6)(c)(1) and (c)(2). He also argues the court abused its authority by adding the subparagraph (c)(1) as a basis for adjudication in its ruling on his motion to amend or enlarge. The mother does not challenge the CINA adjudications, but she and the father both challenge the dispositional order placing Je.S. in foster care.

## I. Adjudication

We review CINA proceedings de novo. *In re J.S.*, 846 N.W.2d 36, 40 (Iowa 2014). Our primary concern is the children's best interests. *Id.* CINA determinations must be based upon clear and convincing evidence. Iowa Code § 232.96(2). "Clear and convincing evidence" is evidence leaving "no serious or substantial doubt about the correctness of the conclusion drawn from it." *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). We may affirm the juvenile court if one ground, properly urged, exists to support its adjudication. *In re L.G.*, 532 N.W.2d 478, 480 (Iowa Ct. App. 1995).

We turn first to the father's objection to the court's expanded ruling in response to his pro se motion to enlarge or amend. Motions under rule 1.904(2) "are permitted so that courts may enlarge or modify findings based on evidence already in the record." *In re J.J.S., Jr.*, 628 N.W.2d 25, 29 (Iowa Ct. App. 2001) (quoting *In re Marriage of Bolick*, 539 N.W .2d 357, 361 (Iowa 1995)). "Rule

---

[2] "Mental injury caused by the acts of the child's parent, guardian, or custodian." Iowa Code § 232.2(6)(c)(1).

1.904(2) permits the court to enlarge or amend its findings and conclusions and to modify or substitute the judgment or decree." *In re Marriage of Okland*, 699 N.W.2d 260, 263–64 (Iowa 2005). The language of the rule does not limit the court's modification to relief requested in the 1.904(2) motion. In this case, the father was on notice from the CINA petition that section (c)(1) was being alleged as a ground for adjudication. The court did not hear new evidence, but rather based its enlarged conclusions on evidence presented at the CINA hearing. We find no error in the court's modification of its original order. *See generally Iowa Elec. Light & Power Co. v. Lagle,* 430 N.W.2d 393, 396 (Iowa 1988) ("A district court's power to correct its own perceived errors has always been recognized by this court, as long as the court has jurisdiction of the case and the parties involved.").

As for the merits of the adjudication, the father alleges he is being blamed for the mother's infliction of mental injury on the children. We find the father's focus to be misdirected. The question is not which parent is more blameworthy. The question is whether the children have suffered or are imminently likely to suffer harmful effects as a result of (1) mental injury caused by the parents' acts or (2) the failure of the parents to exercise a reasonable degree of care in supervising them. Iowa Code § 232.2(6)(c)(1), (c)(2). "Harmful effects" relate to "the physical, mental or social welfare of a child." *J.S.*, 846 N.W.2d at 41. A "mental injury" is defined as a "nonorganic injury to a child's intellectual or psychological capacity as evidenced by an observable and substantial impairment in the child's ability to function within the child's normal range of

performance and behavior." Iowa Code § 232.2(35). We conclude the juvenile court's CINA adjudication under subsection (c)(1) is supported by clear and convincing evidence. *See In re L.G.*, 532 N.W.2d at 480 (allowing affirmance on any ground properly urged).

The juvenile court heard evidence concerning efforts by all three children to harm themselves. An Iowa DHS social worker testified, "All three kids expressed to the Department that the relationship between the parents is very contentious and conflictual and that's causing them emotional distress." The worker explained the mother lacks boundaries as to the information she shares with the children about her critical feelings toward the father and their ongoing custody issues. The father, while less blatant, also communicates his negative feelings toward the mother to others, and the children are aware of those communications. The children are hesitant to talk to the DHS workers while in the company of their father.

The emotional battle is not new. As far back as 2009, a case worker from the Colorado Department of Human Services said "[i]t is our assessment that this is a case of spousal conflict that could possibly result in an unhealthy emotional environment for the children." The parents were divorced in Colorado in 2010. The Colorado court granted custody of the children to the father and the family moved to Iowa in the fall of 2011. Both parents now live in Scott County. The prediction of the Colorado social worker has proved true as the divorced parents continue to behave vindictively toward one another, leaving the children feeling stuck in the middle.

The actions of both parents have contributed to mental injuries to all three children, as evidenced from the children's fragile mental health and endeavors to harm themselves attributed to the constant stress of their parents' embittered relationship. *See* Iowa Code § 232.2(6)(c)(1).

The Iowa DHS reports that the father has been contentious and controlling since the case opened. He declines to meet with the case workers and restricts communication to emails. He insists on tape recording the family team meetings. He is so determined not to give any advantage to the mother on any issue that he fails to do what is in the best interests of the children. Even during the adjudication hearing, the father and his counsel tried to shift blame for the children's difficulties to their mother.

The State offered clear and convincing evidence in support of subparagraph (c)(1). Both Je.S. and Ja.S. reacted to the emotional toll from their parents' conduct by taking overdoses of medication and Ju.S. swallowed a bullet due to the stress of his circumstances. The DHS case plan includes therapy for all three children. Continued DHS supervision is necessary to ensure the psychological harm to the children does not worsen.

## II. Disposition Order

The juvenile court is required to reach the "least restrictive disposition appropriate considering all the circumstance of the case." Iowa Code § 232.99. Following a disposition hearing, the district court ordered Ja.S. and Ju.S. to be placed with the father under DHS supervision. The court ordered the oldest child, Je.S., into DHS custody for placement in foster care. The father argues

Je.S. should be returned to his care and the company of her two siblings. The mother argues Je.S. should be returned to her care as she is able to meet her daughter's needs and it is in Je.S.'s best interests.

After reviewing the record, we find the district court's placement of Je.S. to be appropriate. The mother has been unable to address the issues faced by Je.S. The mother and Je.S. fight often. The mother has left the home following these fights to stay overnight with a friend. The record also reflects the mother does not appreciate the severity of Je.S.'s depression and has discouraged her participation in therapy. Je.S.'s therapist and her CASA recommended she not remain with the mother.

As for the father, the record shows that he and Je.S. do not communicate on a regular basis. Je.S. has threatened to run away if placed with her father. We believe it is appropriate to consider the concerns voiced by Je.S., who is now fifteen years old. *Cf.* Iowa Code § 232.116(3)(b) (allowing children older than ten years to object to the termination of parental rights); *In re Marriage of Hunt*, 476 N.W.2d 99, 101 (Iowa Ct. App. 1991) (giving weight to children's views on custody in dissolution case). Our goal is to ensure the safety and welfare of the child through the least restrictive disposition. Given the circumstances in this record, we agree with the juvenile court's decision not to place Je.S. with either parent at this time, but recognize that placement may be subject to change as the family continues towards the goal of reunification.

**AFFIRMED.**