# IN THE COURT OF APPEALS OF IOWA

No. 20-1395
Filed January 21, 2021


**IN THE INTEREST OF S.L. and K.L.,**
**Minor Children,**

**M.L., Mother,**
     Appellant.
_____


Appeal from the Iowa District Court for Allamakee County, Linnea M.N. Nicol, District Associate Judge.


A mother appeals the termination of her parental rights. **AFFIRMED.**


Barry S. Mueller, Postville, for appellant mother.

Thomas J. Miller, Attorney General, and Kathryn K. Lang, Assistant Attorney General, for appellee State.

Kevin Stinn, Waukon, attorney and guardian ad litem for minor children.


Considered by Bower C.J., May, J., and Gamble, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2021).

**GAMBLE, Senior Judge.**

A mother appeals the termination of her parental rights to her children, S.L. and K.L.  She argues the juvenile court should have reopened the record so she could provide additional evidence, challenges the statutory grounds authorizing termination, and challenges the juvenile court's best-interest determination.[1]  We affirm.

## I. Scope and Standard of Review

With respect to motions to reopen the record, our review is for an abuse of discretion.  *In re L.T.,* 924 N.W.2d 521, 536 (Iowa 2019).  "In order to show an abuse of discretion, a party must show the juvenile court's action was unreasonable under the attendant circumstances."  *Id.*

With respect to other challenges, we review termination proceedings de novo.  *In re P.L.,* 778 N.W.2d 33, 40 (Iowa 2010).  "We give weight to the factual determinations of the juvenile court but we are not bound by them.  Grounds for termination must be proven by clear and convincing evidence.  Our primary concern is the best interests of the child."  *In re J.E.,* 723 N.W.2d 793, 798 (Iowa 2006) (citations omitted).

We use a three-step process to review the termination of a parent's rights.  *In re A.S.,* 906 N.W.2d 467, 472 (Iowa 2018).  First, we determine whether a ground for termination under section 232.116(1) has been established.  *See id.* at

[1] To the extent to mother attempts to challenge the reasonable-efforts mandate, we find her argument not sufficiently developed for our review.  *See In re B.T.*, No. 20-0768, 2020 WL 4812662, at *2 n.2 (Iowa Ct. App. Aug. 19, 2020); *In re K.M.*, No. 19-1637, 2020 WL 110408, at *3 n.6 (Iowa Ct. App. Jan. 9, 2020); *In re O.B.*, No. 18-1971, 2019 WL 1294456, at *2 (Iowa Ct. App. Mar. 20, 2019).

472–73. If a ground for termination has been established, then we consider "whether the best-interest framework as laid out in section 232.116(2) supports the termination of parental rights." *Id.* at 473 (citation omitted). Then we consider "whether any exceptions in section 232.116(3) apply to preclude termination of parental rights." *Id.* (quoting *In re M.W.*, 876 N.W.2d 212, 220 (Iowa 2016)). "However, if a parent does not challenge a step in our analysis, we need not address it." *In re J.P.*, No. 19-1633, 2020 WL 110425, at *1 (Iowa Ct. App. Jan. 9, 2020).

## II. Discussion

### A. Reopening the Record

As a preliminary issue, we address the mother's claim that the juvenile court abused its discretion when it denied her motion to reopen the record. Here, the juvenile court reopened the record on its own motion and ordered the Iowa Department of Human Services (DHS) to gather information regarding a potential guardianship and report its findings. DHS complied with the order and provided the report as ordered. Roughly one-and-a-half months later, and three months after the termination hearing, the juvenile court entered its termination order. The mother filed her motion to reopen the record twelve days later.[2]

We conclude the juvenile court did not abuse its discretion when it denied the mother's motion. We recognize the Iowa Supreme Court recently determined a juvenile court abused its discretion when it denied a motion to reopen the record in a termination case when "there was an inordinate delay in entering the

---

[2] The mother wanted to introduce evidence largely unrelated to a potential guardianship.

termination order," exceeding twenty months, and the mother sought to reopen the record a year after the termination hearing. *See L.T.*, 924 N.W.2d at 526. But the present case bears little resemblance to *L.T.* Three months, not twenty, passed between the termination hearing and issuance of the termination order. And here the mother sought to reopen the record *after* the court issued the termination order. Moreover, we previously "conclude[d] a juvenile court does not have the ability to reopen the record to receive additional evidence after a final adjudication on the merits of the termination petition." *In re J.J.S., Jr.*, 628 N.W.2d 25, 30–31 (Iowa Ct. App. 2001).

We turn next to our three-step analysis.

**B. Statutory Grounds**

The mother challenges the statutory grounds authorizing termination. Here, the juvenile court authorized termination of the mother's rights pursuant to Iowa Code section 232.116(1)(d) and (f) (2020). When, as here, the juvenile court terminates on multiple statutory grounds, we may affirm on any ground supported by the record. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). So we focus on section 232.116(1)(f). Section 232.116(1)(f) authorizes termination when:

> (1) The child is four years of age or older.
> (2) The child has been adjudicated a child in need of assistance pursuant to section 232.96.
> (3) The child has been removed from the physical custody of the child's parents for at least twelve of the last eighteen months, or for the last twelve consecutive months and any trial period at home has been less than thirty days.
> (4) There is clear and convincing evidence that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102.

The mother only challenges the last element: whether the children could be safely returned to her care.  Upon our review of the record, we find the children could not be returned to her care.

Throughout the life of this case, which began in May 2018, the mother's relationships with unsafe paramours has remained a key issue.  Yet the mother shows little insight of the importance of this issue as demonstrated by her conduct. In April 2020, the children returned the mother's care for a trial home placement. But the trial home placement terminated less than a week later because the mother had the children around her paramour, who has an extensive criminal history and is a recovering drug user, after she was directed to have no contact with him.[3]  The paramour stayed the night at the mother's home because he was "having anxiety issues."  She told the children her paramour was not supposed to be around them but that she would tell the foster parent and social worker about their contact with him.  But she did not volunteer the information to either the foster mother or the social worker.  The mother also told the children to not tell the foster mother that they were around her paramour.

And although the mother initially admitted her mistake when confronted, later she became defensive with DHS and argued it was unrealistic for her to go thirty days without contact with her paramour because he is the father to her unborn baby.  This is indicative of a pattern that a social worker described as "the theme revolving there, that keeps coming back is that [the mother] has many, many times over chose to be in a relationship and put that first ahead of the needs of the

---

[3] The mother stated to a care provider that she thought her paramour could be listed on the child abuse registry.

kids." This is concerning because S.L. expressed to the foster parent that she has felt unsafe around some men in the mother's life. It is fundamental that children must feel safe and be safe in their homes.

We recognize the mother eventually ended her relationship with the paramour discussed above. However, her exposure of the children to this man was an egregious breach of trust. Given the mother's past conduct, we believe she will continue her pattern of involving herself with unsafe people and putting their interests ahead of the safety and welfare of the children. Therefore, we conclude the children cannot be safely returned to her care. *Cf. In re A.Z.*, No. 18-1420, 2018 WL 4909831, at *2 (Iowa Ct. App. Oct. 10, 2018) (finding a mother exposed her children to a risk of harm when she permitted them to be around a fugitive and a known drug user); *In re M.M.*, No. 18-1028, 2018 WL 4361074, at *2 (Iowa Ct. App. Sept. 12, 2018) (concluding a child could not be returned to the mother when the mother continued to interact with drug abusers).

A statutory ground authorizing termination is satisfied, and the first of our three steps is complete. We move to the next step.

### C. Best Interests

Next, we consider whether termination is in the children's best interests. In considering the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *P.L.*, 778 N.W.2d at 40 (quoting Iowa Code § 232.116(2)). "It is well-settled law that we cannot deprive [children] of permanency after the State has proved a ground for termination under section 232.116(1) by hoping

someday a parent will learn to be a parent and be able to provide a stable home for the child[ren]." *Id.* at 41.

We find termination to be in the children's best interest. It would provide the children with permanency, which their therapist identified as their most urgent need. And termination will provide the children with permanency through adoption. When the foster mother was asked if she would be willing to integrate the children into her family she replied, "I love them like my own so, yes, definitely." And she assured the juvenile court she would adopt the children if given the opportunity. *See* Iowa Code § 232.116(2)(b). So we find termination to be in the children's best interest.

The second step in our three steps is complete. And because the mother does not request we apply a section 232.116(3) permissive factor to preclude termination, we do not address the remaining step in our process and end our analysis here. *See In re H.K.*, No. 20-0800, 2020 WL 4498156, at *2 (Iowa Ct. App. Aug. 5, 2020).

**AFFIRMED.**