**IN THE COURT OF APPEALS OF IOWA**

No. 23-1509
Filed December 6, 2023

**IN THE INTEREST OF K.P.,**
**Minor Child,**

**A.P., Father,**
    Appellant.
_____

    Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block, Associate Juvenile Judge.


    The father appeals the termination of his parental rights.  **AFFIRMED.**


    Joseph G. Martin, Cedar Falls, for appellant father.

    Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

    Michelle Marie Jungers of Jungers Law PLLC, Waterloo, attorney and guardian ad litem for minor child.


    Considered by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the father's parental rights to K.P., born in 2018, pursuant to Iowa Code section 232.116(1)(f) (2023).[1]  The father appeals, arguing the juvenile court should have delayed permanency and granted him additional time to work toward reunification or, in the alternative, established a guardianship for K.P. in lieu of terminating his parental rights.

Our review is de novo.  *In re J.J.S. Jr.*, 628 N.W.2d 25, 28 (Iowa Ct. App. 2001).  Our primary concern is the best interests of the child.  *Id.*

**Additional Time.**  The father, who was in prison at the time of the termination trial, does not contest that K.P. could not be returned to his custody at that time or that the State otherwise proved the ground for termination under section 232.116(1)(f).  But he argues the juvenile court should have delayed permanency to give him more time to work toward reunification with K.P.; he argues this course of action is in K.P.'s best interests.

After the termination trial, the juvenile court may decide to not terminate parental rights if it finds there is clear and convincing evidence that child-in-need-of-assistance proceedings should continue and enters an order to extend the time for reunification in accordance with section 232.104(2)(b).  Iowa Code § 232.117(5).  The court may continue the proceedings for an additional six months if it finds "the need for removal . . . will no longer exist at the end of the additional six-month period."  *Id.* § 232.104(2)(b).

---

[1] The mother consented to the termination of her parental rights; she is not a party to this appeal.

At the time of K.P.'s removal from the parents' custody in May 2022, the father was incarcerated. Of the approximately fifteen months between removal and the termination trial, the father spent fourteen of those in jail or prison—he was in the community for about one month in early 2023 before having his release revoked for, among other things, having a controlled substance in his possession and using the substance. The father had one in-person visit with K.P. during the month he was in the community; this was his first time interacting with K.P. in person since the child was less than one year old. While the father was incarcerated in the spring of 2023, he was supposed to have video visits with K.P., but the child ended the first one after approximately five minutes, stating he did not know the man and he looked scary. Video visits were attempted each week in the twelve weeks leading up to the termination trial, but K.P. refused to participate in them. At the time of the August 2023 termination trial, the father remained incarcerated. While he was eligible to be released to a residential facility within the month—a facility where K.P. could not live with him—it was not clear when the facility would have an open bed for the father.[2]

Like the juvenile court, we cannot say the need for K.P.'s removal from the father's custody would be resolved within six months of the August 2023

---

[2] After the juvenile court issued the termination order on August 25, the father filed a motion to reconsider on September 1, in which he asked the court to reconsider its decision to terminate and asserted he had been released from prison—a "fact" the father reiterates in his petition on appeal. But the record closed when the juvenile court "consider[ed] the matter submitted" at the close of the termination trial, and the father did not ask—and the district court did not agree—to reopen the record. Any events that took place after the submission of the case are outside our record facts; we do not consider them. Even so, in response to the motion to reconsider, the juvenile court confirmed its ruling based upon all of the reasons set forth in the termination order.

termination trial. *See id.* § 232.104(2)(b). The father was still incarcerated, recognized his need for substance-abuse treatment once he was released from incarceration, and had no relationship with K.P. With these facts, delaying permanency to allow the father to work toward reunification is not in K.P.'s best interests. *See, e.g.*, *In re Z.H.*, 740 N.W.2d 648, 652 (Iowa Ct. App. 2007) (considering whether delaying permanency to give the parent more time was in the child's best interests).

**Guardianship.** In the alternative, the father argues the juvenile court should have established a guardianship for K.P. in lieu of terminating the father's parental rights. *See* Iowa Code § 232.117(5) (allowing the court, after a termination hearing, to not order termination of parental rights but instead enter an order in accordance with several sections, including section 232.104); *see also id.* § 232.104(2)(d)(2) (allowing the court to enter an order transferring guardianship and custody of the children to fictive kin). To establish the guardianship, the court must determine by clear and convincing evidence that "termination of the parent-child relationship would not be in the best interest of the child[ren]." *Id.* § 232.104(4)(a).

At the time of the termination trial and during most of the fifteen months of his removal from parental custody, K.P. was in the care of D.M., fictive kin whom K.P. considers his grandmother and who often cared for K.P. even before the Iowa Department of Health and Human Services became involved. The father asked the juvenile court to establish a guardianship in D.M. In response, the juvenile court ruled:

5

> The request of [the father] . . . for guardianship to be placed with [D.M.] may be in the best interests of [the father], however, is not in the best interests of the child. The child has no bond with [him]. [K.P.] continues to refuse any visitation with his father. [The father] has demonstrated repeatedly through his actions that the child is not a priority in his life. [The father] continues to be unavailable to the child due to his own actions. [He] continues to abuse illegal substances, even while in the custody of the Iowa Department of Corrections. No evidence has been established from which the court could make a determination that . . . preserving the parent/child relations between [the father] and [K.P.], would be in the child's best interests. Further, termination of parental rights is the most permanent placement for a child. [D.M.] desires to adopt the child. [She] has been an integral part of the child's life, throughout his lifetime. The child identifies [her] as his grandmother and desires to remain with [her]. The child reports feeling safe while in the care of [D.M.]

On our de novo review, we adopt the juvenile court's reasoning as our own. As we have often stated, "a guardianship is not a legally preferable alternative to termination." *In re B.T.*, 894 N.W.2d 29, 32 (Iowa Ct. App. 2017). And here, terminating the father's parental rights will allow K.P. to achieve stability and permanence through adoption, which is in the child's best interests. *See In re A.S.*, 906 N.W.2d 467, 477–78 (Iowa 2018). We agree with the juvenile court that termination is the best option.

Because neither delaying permanency nor establishing a guardianship in lieu of termination are in K.P.'s best interests, we affirm the termination of the father's parental rights.

**AFFIRMED.**