**IN THE COURT OF APPEALS OF IOWA**

No. 23-1712
Filed January 10, 2024

**IN THE INTEREST OF R.R.,**
**Minor Child,**

**R.M., Father,**
  Appellant.
_____

  Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey,

District Associate Judge.

  The father challenges the termination of his parental rights.  **AFFIRMED.**

  Michael S. Fisher of Fisher Law Office, New Sharon, for appellant father.

  Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney

General, for appellee State.

  Samuel K. Erhardt, Ottumwa, attorney and guardian ad litem for minor child.

  Considered by Greer, P.J., and Ahlers and Buller, JJ.

**GREER, Presiding Judge.**

The juvenile court terminated the father's parental rights to R.R., born in July 2022, pursuant to Iowa Code section 232.116(1)(g) and (h) (2023).[1]  The father appeals, challenging one of the grounds for termination and asserting the loss of his rights is not in the child's best interests.  Alternatively, the father requests additional time to work toward reunification with the child.

Our review is de novo.  *In re J.J.S. Jr.*, 628 N.W.2d 25, 28 (Iowa Ct. App. 2001).  Our primary concern is the best interests of the child.  *Id.*

**Statutory Grounds.**  The father, who remained incarcerated at the time of the termination hearing, recognizes the child could not be returned to his custody at that time; he concedes that the State proved the statutory ground for termination under paragraph (h).  While the father challenges some of the elements under paragraph (g), we need only one ground to affirm.  *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012).  So, without considering the father's challenge to paragraph (g), we conclude there is clear and convincing evidence for termination under section 232.116(1)(h).  *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (recognizing the court need not address if a ground for termination exists when the parent does not dispute the existence of a ground).

**Best Interests.**  The father argues termination of his parental rights is not in R.R.'s best interests.  When making a best-interests determination, we focus on the child's safety and need for a permanent home.  *In re J.E.*, 723 N.W.2d 793, 801 (Iowa 2006) (Cady, J., concurring specially).  And we consider the best

---

[1] The mother's parental rights were terminated pursuant to section 232.116(1)(g), (h), and (j); she does not appeal.

placement for furthering the child's long-term nurturing and growth and their physical, mental, and emotional condition and needs. Iowa Code § 232.116(2).

R.R. was born in July 2022 with his intestines outside of his body. Because of his need for additional medical intervention and ongoing care, he remained in the hospital for a number of months—until early November. The Iowa Department of Health and Human Services was involved with the family during this time because R.R.'s umbilical cord blood tested positive for methamphetamine. Before R.R.'s discharge from the hospital, both the mother and father were incarcerated; they were each eventually sentenced to prison terms.

The father remained incarcerated as of the final date of the termination trial in late August 2023 although he expected to be released in just a few days. In part because of R.R.'s fragile medical state, the father and R.R. had no in-person interactions from the date the father went to jail on September 5, 2022, through the end of the termination trial; the father and baby's only interactions during this nearly year-long period consisted of a few video visits. While the father had "sporadically" visited R.R. at the hospital during the first two months of the child's life, the father was actively using methamphetamine at that time and was afraid to physically interact with R.R. Because of his decision to not be involved early on, the father failed to engage in the training on how to provide the special care R.R. requires. And the child's current condition, after many medical interventions, still requires knowledgeable care taking—all of which has been handled during the father's incarceration, leaving us with no history about the father's abilities. In contrast, R.R.'s foster mother—to whose home he went immediately upon his discharge form the hospital in November 2022—was well-versed in his care and ensured he

attended all his medical appointments. The foster mother was a pre-adoptive home, and she indicated her willingness to adopt R.R. *See* Iowa Code § 232.116(2)(b).

While the father claimed he maintained sobriety during the nearly one year he was incarcerated,[2] we measure this period of sobriety—occurring in an institutionalized setting—against his several years of methamphetamine addiction before his incarceration. We hope the father continues living a sober lifestyle outside of the institutional setting, but he has not yet shown he is able to do so. And while all children deserve sober parents, we recognize R.R. has a particular need for sober, attentive caregivers due to his unique and complicated medical needs. For these reasons, we conclude termination of the father's parental rights is in R.R.'s best interests.

**Additional Time.** In the alternative, the father asks us to delay reaching a permanency decision and give him additional time to work toward reunification with R.R. After the termination trial, the juvenile court may decide to not terminate parental rights if it finds there is clear and convincing evidence that child-in-need-of-assistance proceedings should continue and enters an order to extend the time for reunification in accordance with section 232.104(2)(b). *Id.* § 232.117(5). The court may continue the proceedings for an additional six months if it finds "the need for removal . . . will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

---

[2] We note the father tested positive for fentanyl while incarcerated; the father maintains he did not knowingly take fentanyl and suggests a number of inmates tested positive during the same time period without intentionally taking the substance.

Here, we recognize the father was just days from being released from prison at the time the termination trial concluded and claimed to have nearly a year of sobriety. But we cannot say that the need for R.R.'s removal from the father's custody would be resolved within six months, as the father needed to establish he could remain sober outside of a structured, custodial setting and show he could now handle R.R.'s medical needs before the child could be placed in his physical custody. *See, e.g., In re P.F.*, No. 15-1103, 2015 WL 5970017, at *3 (Iowa Ct. App. Oct. 14, 2015) (recognizing that sobriety in a structured, custodial setting does not demonstrate an ability to maintain sobriety in the community). When considering the father's approximately six-year addiction[3] to methamphetamine before his incarceration and the fact that the father had not yet shown any time of sobriety in the community, we cannot say six months is enough time for him to show his commitment to a sober lifestyle. *See, e.g.*, *In re K.V.*, No. 19-1775, 2020 WL 110439, at *1 (Iowa Ct. App. Jan. 9, 2020) ("Even assuming the mother has managed six months of sobriety, a short period of sobriety is not a reliable indicator of her ability to remain sober when considered in light of her history, which includes ten years of substance use and several prior failed attempts at sobriety."). So, delaying permanency is neither warranted nor in R.R.'s best interests.

We affirm the termination of the father's parental rights.

**AFFIRMED.**

---

[3] Based on the father's birth date, he was twenty-four when he went to jail. And at trial, the father testified, "[W]hen I was [eighteen], I started getting high. I stuck a needle in my arm, you know, and I've been basically balls to the walls ever since. I haven't taken no more than a month or two off at any given time [until becoming incarcerated]."