**In the Interest of E.K. and L.M., Minor Children,**

**C.H., Father of L.M., Appellant.**

**No. 97–0034.**

Court of Appeals of Iowa.

July 30, 1997.

· D. Bradley Kiesey, Washington, for appellant.

Thomas J. Miller, Attorney General, Chris Odell, Assistant Attorney General, Gerald N. Partridge, County Attorney, and Barbara A. Edmonson, Assistant County Attorney, for appellee-State.

Robert G. Schlegel of Day, Meeker, Lamping & Schlegel, Washington, guardian ad litem for minor children.

Considered by HABHAB, C.J., and CADY and VOGEL, JJ.

HABHAB, Chief Judge.

Rose and Charles are the parents of Loretta, who was born on August 4, 1994. Their parental rights were terminated and Charles appealed. Rose does not appeal. We affirm.

Rose and Charles had a relationship in 1993. Rose claimed she had been sexually assaulted by Charles and this incident led to her pregnancy. Charles was sent to jail in Missouri for a parole violation in December 1993. He was aware of Rose's pregnancy at that time. In April 1994, Charles escaped from confinement and stole a car in order to drive to Iowa to see Rose. In May 1994, he was sentenced to prison for five years on a charge of escape and six years on a charge of stealing.

Loretta was born in August 1994. Two weeks after Loretta's birth, Rose brought her to see Charles in prison. This is the only time Charles has seen his daughter.

The Department of Human Services (DHS) became involved with Rose in March 1995 when her other child received an electrical shock after he stuck a knife in a toaster. This incident resulted in a founded report of denial of critical care. In June 1995, Rose received a founded report of denial of critical care of both of her children due to unsafe conditions in her home. The children were placed in foster care in August 1995.

In an adjudicatory order dated September 8, 1995, the juvenile court found Charles' imprisonment resulted in his being unable to provide adequate care for Loretta. The court found she was a child in need of assistance under section 232.2(6)(n) because her father's imprisonment resulted in her not receiving adequate care. The court ordered that Charles should contact DHS upon his release and then cooperate with services, including a psychiatric evaluation, parent skill development, and completion of a home study.

In August 1996, the State filed a petition to terminate Rose and Charles' parental rights to Loretta. At the termination hearing, Charles testified he would like to take custody of Loretta as soon as he is released from prison. He had no possibility of parole until May 1997. The maximum expiration of his sentence is the year 2000.

Charles' mother, Vada, testified she would be willing to care for Loretta until Charles is released. Vada has not had any involvement with Loretta. She claimed she had previously provided foster care in Missouri. In rebuttal, the State presented evidence that the Missouri DHS had been involved with Vada because of allegations she had prostituted her daughters. There was no record Vada had been approved to provide foster care.

The juvenile court terminated Charles' parental rights pursuant to sections 232.116(1)(d), which requires a finding the parent has not maintained significant and meaningful contact with the child during the previous six months, and 232.116(1)(g), which requires a finding the child has been removed from the parent's custody for at least six of the last twelve months and the child cannot be returned at the present time. The

court found Charles was unable to care for Loretta at the present time because he was in prison. Charles appeals the termination of his parental rights.[1]

■■■ **I.** The scope of review in termination cases is de novo. *In re S.N.,* 500 N.W.2d 32, 34 (Iowa 1993). The grounds for termination must be proven by clear and convincing evidence. *In re R.R.K.,* 544 N.W.2d 274, 277 (Iowa App.1995). Our primary concern is the best interests of the child. *In re A.B.,* 554 N.W.2d 291, 293 (Iowa App.1996).

■■ **II.** Charles asserts his parental rights should not be terminated solely because he is in prison. He states he could care for Loretta once he is released. He believes he should be given an additional amount of time to become an adequate parent because he did not know he had violated his parole at the time Loretta was conceived. He points out he has attempted to maintain contact with Loretta by sending her letters.

■■ We must reasonably limit the time for parents to be in a position to assume care of their children because patience with parents can soon translate into intolerable hardship for the children. *In re A.Y.H.,* 508 N.W.2d 92, 96 (Iowa App.1993). A child should not be forced to endlessly suffer the parentless limbo of foster care. *In re J.P.,* 499 N.W.2d 334, 339 (Iowa App.1993). The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. *In re D.A.,* 506 N.W.2d 478, 479 (Iowa App.1993). Children simply cannot wait for responsible parenting. *In re L.L.,* 459 N.W.2d 489, 495 (Iowa 1990).

Although Charles might not have known he had violated his parole at the time Loretta was conceived, Charles was aware he was going to be a father at the time he escaped from confinement, stole a car, and drove to Iowa. His actions greatly extended his time in prison. Due to his actions, he has had virtually no contact with his child. As the juvenile court found, due to Loretta's young age, Charles' letters are meaningless to her. We find Loretta need not wait longer for Charles to assume his role as a parent.

■■ **III.** Charles claims the State failed to offer him reasonable services to reunite him with Loretta. Reasonable services must be provided to attempt to reunite a family before the State can terminate parental rights. *In re L.M.W.,* 518 N.W.2d 804, 807 (Iowa App.1994).

Charles has been in prison since before Loretta was born and therefore unavailable for services. His incarceration was due to his own actions and he cannot fault DHS for being unable to provide services while he is in prison. We also find it is not in Loretta's best interests to give Charles additional time to accept services once he is released from prison.

We affirm the decision of the juvenile court terminating Charles' parental rights to Loretta. We determine this termination is in Loretta's best interests.

**AFFIRMED.**

---

**1.** The guardian ad litem has joined in the State's     resistance to the father's appeal.