# IN THE COURT OF APPEALS OF IOWA

No. 14-0498
Filed June 25, 2014

IN THE INTEREST OF K.M. and C.M.,
     Minor Children,

C.M., Father,
     Appellant,

S.M., Mother,
     Appellant.

_____

     Appeal from the Iowa District Court for Warren County, Mark F. Schlenker,

District Associate Judge.

     A mother and father appeal the termination of their parental rights to their

two children.  **AFFIRMED ON BOTH APPEALS.**

     Jeremy M. Evans of Sporer & Flanagan, P.L.L.C., Des Moines, for

appellant-father.

     Nancy L. Pietz of Pietz Law Office, Des Moines, for appellant-mother.

     Thomas J. Miller, Attorney General, Janet L. Hoffman, Assistant Attorney

General, John Criswell, County Attorney, and Tracie Sehnert, Assistant County

Attorney, for appellee.

     M. Kathryn Miller of the Juvenile Public Defender, Des Moines, attorney

and guardian ad litem for minor children.

     Considered by Vogel, P.J., and Doyle and Mullins, JJ.

**MULLINS, J.**

A mother and father[1] appeal the termination of their parental rights to their children. They both contend the court erred in concluding the department of human services (DHS) made reasonable efforts to reunify the family. They both contend they should have been granted an additional six months to work toward reunification and the termination was not in the best interests of the children. They challenge the evidence to support each ground the juvenile court cited as a basis to terminate their rights. And finally, they both assert the exceptions to termination found in Iowa Code section 232.116(3) (2013) apply in this case. We affirm the termination of both parents' parental rights.

**I. Background Facts and Proceedings.**

The family came to the attention of DHS based on the report of the older child that she had been sexually abused by the father. The father was a registered sex offender, and the current allegations of abuse matched the facts of the case that resulted in the requirement that he register. In that case the father pled guilty to the offense of lascivious acts with a child. Neither the older child at issue nor the person reporting the child's statements had any knowledge of the facts of the prior case.

A safety plan was initially put in place to permit the children, then ages six and one, to remain with the mother so long as the father had no unsupervised contact with the children. When the safety plan was violated, the children were

---

[1] The father appealing is the biological father of the younger child and the legal father of the older child. The older child's biological father also had his parental rights terminated as part of these proceedings, but he has not appealed. Throughout the remainder of this opinion, each reference to "father" is to the appealing father.

removed and placed in different familial homes. The children were adjudicated children in need of assistance (CINA) in December 2012. The father was incarcerated beginning in February 2013 for violating the sex offender registry requirements.

Prior to the father's incarceration, both parents had supervised visitation with both children until the older child's therapist recommended the visitation stop with respect to her. The supervised visits continued with the younger child for both parties until the father went to prison. After February 2013, only the mother continued supervised visitation with the younger child though the father would call during the visits to speak to the child. The mother has consistently attended supervised visitation with the younger child, though she has not progressed beyond supervised visitation due to her failure to acknowledge or believe the older child's reports of abuse.

Neither the mother nor father has had any visitation with the older child since October 2012. The therapist testified that once the visits were stopped, the child began to open up about the abuse, and the child has remained consistent in her description of the abuse throughout the case. While resuming supervised visitation with the older child had been discussed through the progress of the case, the therapist testified the child remained extremely anxious about resuming contact with either parent fearing punishment for discussing the abuse. The child reported she had previously told the mother about the abuse and the mother had hit her. The mother denied this allegation. In addition, shortly after DHS began working toward resuming supervised visitation, the mother twice tested positive

for methamphetamine. The mother also drove by the older child's school as the child was leaving the building and yelled out of the car at the older child. The child hid from the mother, and a no-contact order was entered in the case.

The State filed the petitions to terminate the parental rights of all parents involved in September 2013. The court held a series of hearings on the termination petitions in November and December 2013. Prior to the termination hearing, the mother filed a motion to modify the placement of the older child and to address reasonable efforts. The court addressed this motion at the termination hearing. The court also addressed the parents' objections to the no-contact order at the same time. The court issued its decision at the end of February 2014, terminating the parental rights of both the father and mother. The mother's rights with respect to the older child were terminated under Iowa Code section 232.116(1), paragraphs (b), (d), (e), (f), (i), and (l), and her rights with respect to the younger child were terminated under paragraphs (d), (e), (h), (i), and (l). The father's rights were terminated with respect to the older child under section 232.116(1), paragraphs (b), (d), (e), (f), and (i), and his rights with respect to the younger child were terminated under paragraphs (b), (d), (e), (h), and (i).

The court found the mother in particular not truthful in her testimony. Despite their testimony to the contrary, the court found that the mother and father intended to maintain their relationship after the father was no longer incarcerated. The court found the overriding concern was the mother's failure to protect her children from the predatory conduct of the father, and in fact the court stated the

mother had never convincingly even acknowledged that the abuse of the older child had occurred. The court concluded meaningful change cannot occur without this recognition. The court found the best interests of the children would be served by the termination of the parental rights, and it found the severing of any bond between the children and the parents would not be so detrimental as to militate in favor of not terminating the parental rights.

The court denied the mother's motion to modify the placement and address reasonable efforts. The court concluded there were no specific factors, conditions, or expected behavioral changes that could resolve the conditions that gave rise to the CINA adjudications within six months. The court likewise denied the request for additional visitation.

Both parents appeal attacking the sufficiency of the State's evidence to support each of the grounds upon which the court relied to terminate the parental rights. They also both assert the State did not make reasonable efforts to reunify, the best interests of the children prevent termination, and they should have been granted a six-month extension to work toward reunification.

## II. Scope and Standard of Review.

We review proceedings to terminate parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). "We are not bound by the juvenile court's findings of fact, but we do give them weight, especially in assessing the credibility of witnesses." *Id.* We will uphold a termination order if there is "clear and convincing evidence of the ground for termination." *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). "Evidence is 'clear and convincing' when there are no 'serious

or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence.'" *Id.*

## III. Grounds to Terminate.

Both parents attack the sufficiency of the grounds to support the termination under each of the paragraphs in Iowa Code section 232.116(1) used by the juvenile court. However, we need only find clear and convincing evidence to support one of the grounds relied on by the juvenile court. *Id.* at 707. In this case we find the State proved the grounds for termination as to both children under section 232.116(1)(d).

Under this section, in order to terminate the parental rights, the court must find the following has occurred:

> (1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.
> (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

Iowa Code § 232.116(1)(d). Neither parent contests the first element of paragraph d—that the court had previously adjudicated the child to be a CINA after finding the child to have been sexually abused or the court previously adjudicated a child who is a member of the same family to be a CINA after such a finding. The court concluded the mother failed to get therapy for the older child and the younger child needed to be protected due to his young age.

On appeal from the termination order, both parents assert there is a lack of evidence to support the finding that they were offered services to correct the circumstances and the circumstances continue to exist despite the offer or receipt of services. The mother claims there was unrefuted testimony that she had the requisite parenting skills, a stable home, and all items necessary to take immediate care and custody of both children. The father claims he was not offered any services during his incarceration. He claims he was not offered therapy nor did the DHS workers meet with him or speak with him.

The juvenile court noted that the mother continued up to the time of the termination hearing to deny the truth of the older child's allegations. The mother and father continued to make plans to reunite the family once the father was released from custody. The court found the parents' plan to reunite was a continuing danger to the older child and constituted the most compelling reason to terminate the parental rights as to both children. The court noted the following services were provided to the parents: "substance abuse evaluations, UAs, hair stat tests, supervised visitation, parenting skills education, individual therapy, family therapy, FSRP assistance, and substance abuse counseling." The court did note the majority of services were provided to the mother as the father had been incarcerated two months after the children were adjudicated.

At the termination hearing the State introduced over 1700 pages of transcripts of phone calls made between July and September 2013 between the parents while the father was incarcerated; the calls occurred sometimes multiple times a day. A review of the transcripts of these phone calls makes it clear that

the parties intend to continue their relationship, that the mother does not believe the older child's allegations of sexual abuse, that both parties blame the older child's custodian[2] for the allegations being made, and that the parents will do whatever it takes to deceive the court and the DHS officials into believing the parties are separated.

Both parties were requested to provide samples for hair stat drug testing in September 2012. The mother only complied in March of 2013 after the threat of contempt of court, and the father never complied. Both parties testified that they went to provide their sample months after the request was made, but the authorization for testing had lapsed by that time so the facility did not allow them to provide the samples. The mother missed thirteen urine analysis drops to check for drugs, claiming she found it difficult to call the number to find out if she was required to provide a sample that day. She also provided two samples in August of 2013 that tested positive for methamphetamine. Despite her clear relapse, she did not obtain a substance abuse evaluation or attend substance abuse treatment.

The parties were directed to place the older child in therapy when the CINA petition was filed in July 2012. The parents refused to do so, and the older child did not start therapy until after she was removed from the parent's care. The mother was asked to attend individual therapy to address the sexual abuse issues involved in this case, but she did not start attending until May 2013. The mother complained about the funding not being approved for her to afford the

---

[2] Each child was placed in a separate relative placement under the supervision of DHS.

counseling. However, when she did finally attend, her therapist refused to provide information about the progress of the therapy to DHS, and it was not until the termination hearing that the mother signed a release to permit the therapist to testify. The therapist testified that the mother had reached an impasse in therapy with respect to the sexual abuse allegations—until she hears from the older child that the father perpetrated the abuse, she will not believe it.

When progress was being made for the mother and older child to have a therapeutic supervised visit, the mother drove by the child's school and yelled out her car window, scaring the child and eroding any progress that had been made in the child's therapy to help the child feel safe around the mother. This action resulted in a no-contact order. The mother's actions and her failure to believe the allegations have caused a stalemate in the mother's therapy. In addition, she stopped attending therapy altogether in October 2013, a month before the first day of the termination hearing.

The mother also admitted to driving by the custodian's house, sometimes twice a week, to see who was present in the home, and the father accessed the custodian's email without permission to obtain a message the custodian had sent to the child's therapist. The mother's housing was unstable throughout the course of the case until the final day of the termination hearing, when she reported she had obtained housing with her oldest son and his partner. She also had a number of jobs throughout the proceedings, and she blamed one of those jobs as the reason she relapsed in August of 2013.

The father went to prison in February 2013 for a violation of the sex offender registry. This was not his first violation. He continually denied the sexual abuse had occurred in this case and also denied at the termination hearing that he had sexually abused his child in the prior case. He claimed to have pled guilty to lascivious acts with a child many years ago only in order to keep his other child from having to testify. He stated he successfully completed sex offender treatment in that case, though he claimed he never admitted to the abuse during his treatment. The DHS social worker indicated that in order for the father to have visits with the older child upon his release from prison, he would need to acknowledge the abuse, obtain a sex-offender evaluation, and attend therapy. She was also concerned with his repeated failure to abide by the terms of the sex offender registry.

We find services were offered to the mother and father, and the circumstances that lead to the adjudication continue despite the receipt of services. Both parents refuse to acknowledge the sexual abuse occurred. They failed to provide samples for the hair stat test when requested and refused to place the older child in therapy when the allegations came to light. They violated the safety plan, resulting in the removal of the children. This all occurred prior to the father going to prison. They continue to plan to remain together as a family after the father is released from custody. The father's incarceration "was due to his own actions, and he cannot fault DHS for being unable to provide services while he is in prison." *In re E.K.*, 568 N.W.2d 829, 831 (Iowa Ct. App. 1997). In fact, the father never requested services while he was in prison. He has not

obtained a sex offender evaluation or treatment. The mother has failed to progress in therapy and has sabotaged her ability to have supervised contact with the older child. We agree the State has by proved clear and convincing evidence the grounds to support termination under section 232.116(1)(d).

## IV. Best Interests.

As we find a ground for termination exists, we next turn to the parents' claim that the best interests of the children preclude termination in this case. *See In re P.L.*, 778 N.W.2d 33, 39 (Iowa 2010) (setting out the three-step analysis the courts should take in termination cases). Under section 232.116(2), the court should give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child.

Both parents contend that it is in the best interest of the children to remain together, rather than split up the siblings. They assert the only way to accomplish this is to prevent termination and return the children to their care. We note it was the parents' recommendation, at the time when the children were removed from their care in September 2012, to place the children in different familial homes. The custodians of the children have ensured throughout the course of this case that the siblings remain in contact with each other. We have no reason to believe this sibling contact would not continue into the future. While it is certainly desirable to keep siblings together, our paramount concern must be each child's best interests. *In re T.J.O.*, 527 N.W.2d 417, 420 (Iowa Ct. App. 1994).

Considering the parents' lack of progress with the services that were offered, it is clearly not in the children's best interests to be returned to the care of the parents for their safety or for their mental and emotional needs and conditions. In fact, in determining the long-term placement of the children, it was the DHS social worker's recommendation that the parents not be made aware of the location of the final custodian should the court terminate the parental rights. This was due to the parents' failure to respect the boundaries imposed by DHS during the pendency of the case.

We agree with the juvenile court's conclusion that termination of the parents' rights was in the best interests of the children in this case.

## V. Exceptions.

Next, the parents claim that the exceptions to termination in section 232.116(3) should prevent termination of their parental rights. Specifically, they assert the children's placement in the homes of relatives and the closeness of their bond with the children should prevent termination. "'The factors weighing against termination in section 232.116(3) are permissive, not mandatory,' and the court may use its discretion, 'based on the unique circumstances of each case and the best interests of the child, whether to apply the factors in this section to save the parent-child relationship.'" *A.M.*, 843 N.W.2d at 113 (citation omitted).

Neither the mother or father have had any contact with the older child since the child's therapist recommended supervised visitation cease shortly after the children were removed from their care. The therapist reported the older child still remained fearful of any contact particularly with the mother. The younger

child on the other hand has maintained contact with both parents through supervised visitation and clearly has a bond with both the mother and father. However, we agree with the juvenile court's finding that this bond alone does not justify preventing the termination the parental rights in this case.

## VI. Reasonable Efforts.

The parents claim the State failed to make reasonable efforts to reunify the family. The only additional service ever requested by either parent was increased visitation between the mother and the children. The father never requested services as stated above and was incarcerated two months after the children were adjudicated CINA. The mother sabotaged her own request for increased visitation by refusing to acknowledge the abuse occurred, providing positive drug screens, and yelling at the older child as she drove by her school. These actions occurred at the same time DHS and the child's therapist were working with the older child to get her to agree to meet with the mother in a therapeutic supervised visit. These actions scared the child and eroded any progress that had been made in the child's therapy to help the child feel safe around the mother. These same actions by the mother also justified DHS's refusal to increase the supervised visitation with the younger child. We reject the parents' claim on appeal that reasonable efforts were not made in this case.

## VII. Six-Month Extension.

We likewise reject the parents' claim that they should have been granted an additional six months to work toward reunification. The children had been removed from the parents' care in September 2012. By the termination hearing

in November and December 2013, little to no progress had been made by the parents. Both parents continued in their denial the abuse occurred, and despite their testimony to the contrary, the clear intent of the parties was to remain together after the father was released from prison. No visitation had occurred with the older child, and only weekly supervised visitation had occurred with the younger child. The mother twice tested positive for methamphetamine and made little progress to address the sexual abuse issues in her individual therapy.

The father contends that he was to be released from prison soon, and he should be granted additional time to participate in services once he is placed in a work-release facility. He claims that the "stakes are so high" now that he would comply with any safety plan DHS would impose upon his release from prison. However, his continued denial that the abuse occurred would prevent any meaningful progress in sex-offender treatment if he were to participate when released from prison, and he has failed to demonstrate an ability to comply with the terms and conditions imposed by the DHS and the department of corrections when he is released in the public. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006) ("[W]e look to the parents' past performance because it may indicate the quality of care the parent is capable of providing in the future.").

In order to be granted an additional six months to work toward reunification, Iowa Code section 232.104(2)(b) requires the court to make a finding that the need for the removal of the child will no longer exist at the end of the additional six-month period. As the district court found, there is no evidence the parents' circumstances will change in six months, and the children are

entitled to permanency in their lives. The children should not be forced to endlessly wait for their parents to provide responsible parenting. *In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990).

**VIII. Conclusion.**

In conclusion, we affirm the termination of both the mother's and father's parental rights with respect to both children in this case as we conclude the State offered clear and convincing evidence to support termination under section 232.116(1)(d). We find it is in both children's best interest for the termination to occur and no exception to termination under section 232.116(3) would justify preventing the termination. DHS made reasonable efforts to reunify the family, and granting the parents an additional six months to work toward reunification was not warranted in this case.

**AFFIRMED ON BOTH APPEALS.**