**IN THE COURT OF APPEALS OF IOWA**

No. 15-1683
Filed April 27, 2016

**IN THE INTEREST OF M.R.P.,**
**Minor Child,**

**A.P., Mother,**
Petitioner-Appellee,

**A.P., Father,**
Respondent-Appellant.

_____

Appeal from the Iowa District Court for Jasper County, Steven J. Holwerda, District Associate Judge.

A father appeals from an order terminating his parental rights. **AFFIRMED.**

Meegan M. Langmaid-Keller of Keller Law Office, P.C., Altoona, for appellant.

Hilary J. Montalvo of Caldwell, Brierly, Chalupa & Nuzum, P.L.L.C., Newton, for appellee.

Considered by Tabor, P.J., and Bower and McDonald, JJ.

**MCDONALD, Judge.**

On May 20, 2015, Alisha, the mother, filed a petition to terminate Anthony, the father's, parental rights in their child, M.P., pursuant to Iowa Code section 600A.8(3)(b) and (4) (2015). The juvenile court found the mother proved the grounds for termination by clear and convincing evidence. Anthony appeals from the order terminating his parental rights.

Termination proceedings are reviewed de novo. *See In re M.M.S.*, 502 N.W.2d 4, 5 (Iowa 1993). Although we are not bound by them, the district court's findings of fact are given weight, especially its findings regarding the credibility of witnesses. *See id.* The statutory grounds authorizing the termination of parental rights must be proved by clear and convincing evidence. *See In re E.K.*, 568 N.W.2d 829, 831 (Iowa Ct. App. 1997). Our primary consideration is the child's best interest. *See In re Dameron*, 306 N.W.2d 743, 745 (Iowa 1981).

M.P. was born in 2008. The child was a "micro-preemie," born at twenty-five weeks. The child has had ongoing and severe medical conditions since the time of her birth. She had chronic pulmonary conditions, which required her to use oxygen for the first few years of her life. She was also unable to nurse, chew, and swallow for a period of time after birth, requiring the use of a gastrostomy tube, a tube inserted through a port in the abdomen that delivers nutrition directly to the stomach. The child underwent numerous therapies and treatments since birth and can now eat; however, she still requires occasional use of her gastrostomy tube as her medical conditions cause a lack of interest in or repulsion to eating. M.P. has a medical care plan that requires almost twenty-four-hour nursing care while at home, school, or any other place. M.P. must

have hourly assessments for her gastrointestinal and respiratory issues and "head-to-toe" assessments every four hours.

The parties were married in 2010, after M.P.'s birth. They separated within a year. At the time of separation, the family was living in Colorado due to Anthony's military service. At the time of separation, Alisha moved back to the marital home in Newton, Iowa, where she has resided ever since. She has had the same telephone number during this time period. Anthony moved from Colorado to Montana in 2012 and then to Michigan in 2014. Anthony did not provide any number or address to Alisha until April 2015.

In 2012, the parties' dissolution of marriage was finalized. The parties were granted joint legal custody of the child. Alisha was granted physical care of the child, and Anthony was granted visitation. Anthony has not exercised visitation with the child since the time of the divorce. Anthony was ordered to pay $345 per month in child support. He has not made any regular child support payment since December 2012. His tax refunds were garnished in 2013, 2014, and 2015 to provide some child support for the child. At the time of the termination hearing, Anthony was approximately $9900 in arrears.

From 2012 through approximately April of 2015, the parties had no contact with a single exception. The sole contact the parties had during that time was in the spring of 2014. Alisha called Anthony's relatives for his contact information, and he called her in response. She offered to forgive his accumulated child support debt if he would give up his parental rights. He replied, "Can I think about it?" He did not call her back. She called Anthony's number a few days

later, but it was disconnected. She did not hear from Anthony for almost another year.

Anthony initiated contact with Alisha by letter dated April 15, 2015. Alisha learned from that letter that Anthony had remarried and had a stepson and daughter with his new spouse. After sending the letter, Anthony began calling Alisha daily and asking to speak to M.P., who did not remember him. Alisha suggested Anthony and M.P. reunite with the help of a reunification therapist, an idea Anthony resisted. Anthony and M.P. eventually spoke on the telephone twice. At the time of the termination hearing, Anthony had not yet set up an appointment to meet with M.P. with a reunification therapist. It was after being contacted by Anthony in April 2015 that Alisha sought to terminate his parental rights.

In June 2015, Anthony filed paperwork to commence a contempt proceeding against Alisha. He also demanded a thirty-day visit with M.P. In early August 2015, Anthony gave Alisha twenty-four hours' notice that he intended to pick up M.P. for a visit. He did not offer to have a nurse present for the visit, despite the fact M.P. is accompanied by a nurse at any time she is not with a trained family member. Anthony did not have such training. Alisha offered to bring M.P. to the therapist's office for a session, but Anthony did not schedule a session. Anthony contacted the police and demanded to see M.P. Ultimately, Anthony did not visit with M.P.

Alisha pleaded two grounds for termination of Anthony's parental rights. First, she alleged Anthony abandoned the child. *See* Iowa Code § 600A.8(3)(b). Second, she alleged Anthony "has been ordered to contribute to the support of

the child . . . and has failed to do so without good cause." Iowa Code § 600A.8(4). The juvenile court concluded Alisha proved both grounds authorizing the termination of Anthony's parental rights. When a juvenile court terminates parental rights on more than one ground, we may affirm the order on any of the grounds. *See In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010).

We conclude there is clear and convincing evidence Anthony abandoned M.P. within the meaning of the statute. A parent is deemed to have abandoned a child six months of age or older unless the parent maintains substantial and continuous or repeated contact with the child as demonstrated by contribution toward support of the child of a reasonable amount, according to the parent's means, and as demonstrated by any of the following:

> (1) Visiting the child at least monthly when physically and financially able to do so and when not prevented from doing so by the person having lawful custody of the child.
> (2) Regular communication with the child or with the person having the care or custody of the child, when physically and financially unable to visit the child or when prevented from visiting the child by the person having lawful custody of the child.
> (3) Openly living with the child for a period of six months within the one-year period immediately preceding the termination of parental rights hearing and during that period openly holding himself or herself out to be the parent of the child.

Iowa Code § 600A.8(3)(b). The subjective intent of the parent does not preclude a determination the parent has abandoned the child. Iowa Code § 600A.8(3)(c).

Anthony has not made a contribution toward support of the child in a reasonable amount, according to his means. We have recognized a parent's financial inability to contribute to the support of the children as justification for a failure to do so. *See, e.g., In re C.C.S.*, No. 14-1010, 2015 WL 576381, at *3 (Iowa Ct. App. Feb. 11, 2015) (upholding a finding of no abandonment where

mother was unemployed). In such cases, however, the parent is making a good faith effort to support the children. *See, e.g.*, *In re J.J.*, No. 08-2026, 2009 WL 1492860, at *6 (Iowa Ct. App. May 29, 2009) (finding father's support at forty-five percent of his ordered obligation was reasonable given his low income). There is no good faith effort in this case. The parties divorced in 2012, and Anthony voluntarily paid child support until the end of that year. He remarried during the same year. His wife has a child from a prior relationship, and Anthony and his wife have since had another child. Anthony supports his wife and two children who reside with him. The record reflects he receives non-reportable VA disability benefits in the amount of $1652 per month. His wife receives a non-reportable VA caretaker stipend in the amount of $1100 per month. In addition, they own and operate a computer repair business. Although Anthony testified he earns no income through the business, he operates the business more than 40 hours per week, leases storefront, and uses a company car. Despite having these resources, Anthony has made no or almost no voluntary child support payments in three years. In addition to not providing meaningful child support, Anthony has not provided the child with health insurance, assisted with medical expenses or medical care, or sent the child any gifts since 2012. "[A]bnegation of court-ordered financial responsibility to a child [is] the equivalent of abandonment." *In re Kelley*, 262 N.W.2d 781, 785 (Iowa 1978).

There is clear and convincing evidence Anthony has not visited the child monthly despite being able to do so. It is undisputed Anthony has not seen the child since at least 2012. The mother has resided in the marital home in Newton since the time of the parties' separation and has maintained the same phone

number.  Anthony has family in Newton or the Newton area.  From 2012 until April 2015, Anthony made no attempt to arrange visitation with M.P.  At the termination hearing, Anthony testified he called, sent emails, and sent letters in an attempt to arrange visitation but Alisha did not respond.  He had no documentation to bolster his testimony.  The district court found Anthony's testimony not credible.  We credit the district court's credibility determination.  We place no weight on Alisha's refusal to allow Anthony visitation on short notice in August of 2015.  Anthony had not seen the child in years, and the child did not know who he was.  M.P. has life-threatening medical conditions requiring hourly monitoring by trained personnel (Alisha is a nurse).  Anthony had not made any arrangements to prepare M.P. or himself for the visitation.

There is clear and convincing evidence Anthony has not had any regular communication with M.P.  Alisha testified Anthony has not attempted to contact her even though she resides in the marital home and has the same phone number.  Alisha's current live-in boyfriend testified he had not seen any packages at their house from Anthony or received any calls there from Anthony between December 2013 and April 2015.  M.P.'s daily nurse, who worked in the home in 2011 and 2012, testified she knew of no contact from Anthony except for one gift at Christmas 2011 or 2012.  The district court believed Alisha and her witnesses on this point, and we give weight to that credibility finding.  Anthony's failure to visit the child at least monthly and his failure to have regular communication with the child were both self-imposed barriers, which do not excuse his conduct.  *See, e.g.*, *M.M.S.*, 502 N.W.2d at 7.

Once the statutory requirements for termination have been met, the petitioner must also show that the termination of parental rights is in the best interest of the child. *In re R.K.B.*, 572 N.W.2d 600, 602 (Iowa 1998). Alisha "wins this point in a rout." *Id.* Anthony contends the child should meet her siblings and develop relationships with them. Anthony contends he is, besides Alisha, the "only other source of guaranteed support" for the child. Anthony states he can learn how to care for M.P.'s medical needs. However, Anthony has been the one—not Alisha, and certainly not M.P.—with the power to introduce the siblings; he has made no such efforts. His contention he is a source of guaranteed support is belied by the record. And while it is possible he could learn how to care for this child, his insistence on exercising a visit of thirty days' time with M.P. without any prior training on her care suggests he does not comprehend the seriousness of her situation. Alisha's live-in boyfriend testified the care regimen took him months to a year to learn. M.P.'s former nurse testified when she fills in for the current nurse, she must spend time re-learning the care plan. M.P.'s care schedule is not something a layperson can pick up on the fly. *See In re C.J.T.*, No. 09-1243, 2010 WL 1052343, at *3 (Iowa Ct. App. Mar. 24, 2010) (finding child's need for close monitoring and specialized care for his medical condition meant substantial parenting changes would not be in child's best interest). Given that this is literally a life or death situation for M.P., our consideration of her best interest compels us to affirm the district court's decision to terminate Anthony's parental rights.

**AFFIRMED.**