# IN THE COURT OF APPEALS OF IOWA

No. 25-0881
Filed August 20, 2025

**IN THE INTEREST OF R.G.,**
**Minor Child,**

**M.P., Mother,**
          Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Michelle Jungers, Judge.

A mother appeals the juvenile court's order terminating her parental rights. **AFFIRMED.**

Luke C. Jenson of Jenson Law Firm, PLC, Waterloo, for appellant mother.

Brenna Bird, Attorney General, and Tamara Knight, Assistant Attorney General, for appellee State.

Tammy L. Banning of Waterloo Juvenile Public Defender Office, Waterloo, attorney and guardian ad litem for minor child.

Considered without oral argument by Ahlers, P.J., and Chicchelly and Sandy, JJ.

**AHLERS, Presiding Judge.**

The juvenile court terminated the parental rights of both the mother and father of a child born in 2023. Only the mother appeals. She only challenges the juvenile court's refusal to give her additional time to work toward reunification instead of terminating her rights. Our review is de novo. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022).

The juvenile court has discretion to grant a parent additional time to work toward reunification. *See* Iowa Code § 232.117(5) (2024) (permitting the court to deny termination and enter a permanency order under section 232.104); *see also id.* § 232.104(2)(b) (providing a permanency option of giving a parent an additional six months to work toward reunification). However, to exercise this option, we must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b). After our de novo review of the record, we agree with the juvenile court's decision to deny the mother's request for additional time.

The Iowa Department of Health and Human Services became involved with this family due to reports that the mother was smoking marijuana in the presence of her child, who was just over one month old at the time. The mother was on pretrial release for felony charges at the time, and her conduct violated the conditions of release, so she was incarcerated. She was subsequently sentenced to twenty-five years in prison following convictions for second-degree burglary, conspiracy to commit a forcible felony, felony eluding, and possession of a

controlled substance with intent to deliver. Despite her lengthy prison sentence, at the first permanency hearing held about a year before the eventual termination hearing, the mother was granted a six-month extension in the hope she would be paroled soon. She was not, and she remained incarcerated through the time of the termination hearing.

Although the mother maintained contact through regular visitation and demonstrated a bond with the child, her ability to participate in rehabilitative services—such as parenting classes and substance abuse treatment—was limited by her incarceration. She testified that she expected to be paroled two months after the termination hearing, but there was no other evidence to support her claim.[1] If released, she planned to reside with her father, who is currently on probation for drug-related charges and has not been approved as a placement option for the child. The mother could not explain persuasively how she intended to overcome this placement obstacle. *Cf. In re D.M.*, No. 18-0086, 2018 WL 1433104, at *2 (Iowa Ct. App. Mar. 21, 2018) (collecting cases finding a child cannot be returned to a parent when the parent does not have stable housing or employment).

We understand the mother's desire to reunify with the child. But the record does not support a finding that reunification could safely occur within six months

---

[1] We ignore the alleged facts the mother's attorney included in her petition on appeal—in violation of our rules of appellate procedure—that are not part of the record, including the mother's alleged release from prison. Because this information was not part of the record before the juvenile court, we may not consider it on appeal. *See In re D.A.W.*, 552 N.W.2d 901, 903 (Iowa Ct. App. 1996) ("[W]e only consider those parts of the record we find were properly considered by the trial court.").

of the termination hearing. There was no guarantee that she would be paroled any time soon, and even if she were, a substantial amount of time would still be required for her to demonstrate sobriety, comply with her case plan, and establish a safe and stable living environment for herself and the child. Transitioning from fully supervised visits to becoming a child's sole caregiver is a significant step— one that necessitates a meaningful amount of time to transition. *In re J.H.*, 952 N.W.2d 157, 170 (Iowa 2020) ("[T]here is a substantial difference between meeting a child's needs under the supervision and guidance of other people and being able to independently care for a child . . . .").

At the time of the termination hearing, the child was nineteen months old and had spent eighteen of those months outside of the mother's custody. Further delay in providing the child with permanency and stability serves only the mother's interest—not the child's.[2] As we have previously emphasized:

> We must reasonably limit the time for parents to be in a position to assume care of their children because patience with parents can soon translate into intolerable hardship for the children. A child should not be forced to endlessly suffer the parentless limbo of foster care. The crucial days of childhood cannot be suspended while parents experiment with ways to face up to their own problems. Children simply cannot wait for responsible parents.

---

[2] In reaching this conclusion, we reject the mother's request that we hold "permanency must be deferred when the parent has been in custody for a non-child endangerment conviction; that parent will soon be released on parole back into the community at the time of the permanency or termination hearing; and the parent and child have demonstrated a current bond." The mother cites no authority to support such a holding. And neither the legislature nor our appellate courts have adopted such a policy automatically giving non-incarcerated parents who have not fulfilled their parenting responsibilities additional time. No good reason exists to give a parent who has not fulfilled her parenting responsibilities due to incarceration an automatic extension when non-incarcerated parents are not given such time.

*In re E.K.*, 568 N.W.2d 829, 831 (Iowa Ct. App. 1997) (internal citations omitted) (affirming the termination of an imprisoned father's parental rights).

Since removal, the child has been placed with the maternal aunt and her family, who provide a safe and stable environment where the child is reportedly thriving. It would be against the child's best interest to prolong uncertainty in the hope that the mother might someday be ready to parent. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990) ("Children simply cannot wait for responsible parenting. Parenting cannot be turned off and on like a spigot. It must be constant, responsible, and reliable.").

Given the record before us, we are not persuaded that an additional six months would remove the barriers to reunification. Accordingly, we affirm the juvenile court's order denying the mother's request for additional time and terminating her parental rights.

**AFFIRMED.**