**In the Interest of H.H., K.H., and C.C., Minor Children,**

**P.S.C., Mother, Appellant.**

**No. 94–1234.**

Court of Appeals of Iowa.

Jan. 23, 1995.

James T. Peters of Ristvedt & Peters, P.C., Independence, for appellant.

Bonnie J. Campbell, Atty. Gen., Gordon E. Allen, Deputy Atty. Gen., Charles K. Phillips, Asst. Atty. Gen., and Andrea Dryer, Asst. County Atty., for appellee-State.

Lon Britt, Asst. Public Defender, Waterloo, guardian ad litem, for minor children.

Considered by DONIELSON, C.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

Patty, the mother of three children, Heather, born in 1987, Kahlie born in 1989, and Colby, born in 1990, appeals an order by the juvenile court terminating her parental rights. Patty raises two issues: (1) the children's interests will be better served by a long-term foster care placement than by terminating her parental rights; and (2) she was not offered services directed toward reunifying her family after she moved to the state of Missouri. We affirm.

This family first came under scrutiny in April 1992, when it was alleged Heather was abused by her father, Tom. Tom, at the time, was in jail. It was determined Heather had been sexually abused but it was not clear if it were at the hands of Tom or a friend. Tom returned home. There were subsequent allegations Tom had pointed a BB gun at the children and put duct tape on their mouths, and he was fighting with Patty. Patty was angry with social workers and the Department of Human Services. Various services were offered. Tom was supposed to leave the home but did not. Thereafter, the children were placed in foster care and Patty became a patient at the mental health center in Independence. The Department complained they could not complete an adequate social history because Tom and Patty did not cooperate in supplying information. The children were not doing well in foster care, and there was an indication Patty was urging them not to cooperate. Additional services were offered without results. When Patty was discharged from Independence, she returned to live with Tom. There were numerous calls to the police department from their home. The parents were required to get evaluations and something called a "family assessment." Tom went to prison.

In August 1993, Patty's mother was allowed to intervene. She had maintained a substantial relationship with the children. There followed a Christmas visitation with her after which Heather and Kahlie reported their grandmother had engaged in inappropriate touching. The children were interviewed at length, as was the grandmother who denied the allegations, and asked to take a lie detector test. Based on the interviews, the Department determined the grandmother had engaged in the inappropriate behavior

and she was no longer considered a viable option for the children.

Patty moved to Missouri and, subsequently, the petition to terminate was filed. The juvenile court found both Tom and Patty had been resistive to help and have a history of frequent moves and relationships that lack stability. The court also found Patty put her personal needs above those of their children. The court found Tom's incarceration keeps him away from the children and he has sexually abused them. The court discounted placement with either Patty's mother or sister.

Patty contends the interests of her children, who have a strong bond with her, would be better served by not terminating her parental rights and by placing the family together in long-term family foster care.

Patty advances testimony concerning the adoptability of the children was minimal, was brief, and the adoption specialist neither appeared before the juvenile court or prepared a written report, rather, the case worker testified there had been a staffing with the adoption specialist and the adoption specialist discussed the ages of the children, their behavior, their therapeutic needs, and the possibility of the three children being adopted as a family unit. There was not testimony the children could be placed together and some indication in the evidence, because of the children's needs, it might require they be separated through adoption.

Patty advances the children have special needs. Heather suffers from a posttraumatic stress disorder, developmental disorders, personality disorders, and severe psychological stressors. It is recommended Heather receive intensive individual therapy. The three children have presented challenges to their foster family and need therapy.

The trial court reached the conclusion, "[t]hey are adoptable." There are no further findings as to the children's adoptability. The State argues the children are adoptable but does no more than refer to the juvenile court's finding and makes no reference to where the evidence supporting the juvenile court's conclusion appears in the record.

Termination is a drastic, final step which improvidently employed can be fraught with danger. Termination must only occur where more harm is likely to befall the child by staying with his or her parents than by being permanently separated from them. *Alsager v. District Court,* 406 F.Supp. 10, 24 (S.D.Iowa 1975). The state's interest in protecting children must be balanced against the parents' countervailing interest in being able to raise their children in an environment free from government interference. *Alsager,* 406 F.Supp. at 22.

We agree with Patty that the record provides little evidence about the future of these children after the termination, and we can make no findings on the evidence presented that the children either will be adopted or they will be adopted as a family unit. We cannot assume termination guarantees adoption. *In re B.H.,* 517 N.W.2d 715, 717 (Iowa App.1994). The children's guardian ad litem has not participated in this appeal by either filing a brief or joining in a brief filed. We must trust the conscious juvenile judge, who determined the children adoptable, and the guardian ad litem will closely monitor this case to see efforts are made to find the children satisfactory permanent homes.

Patty has made little effort to be involved in the children's lives since her move to the state of Missouri. We cannot, therefore, conclude, even if the children do remain in long-term foster care, they will be better served by allowing her parental rights to remain intact.

Patty's second contention is she was not offered reasonable services to be reunited with her children. The issue of whether or not to legally sever the biological ties between parent and child is an issue of grave importance with serious repercussions to the child as well as the biological parents. *In re R.B.,* 493 N.W.2d 897, 899 (Iowa App. 1992). The goal of a child in need of assistance proceeding is to improve parenting skills and maintain the parent-child relationship. *Id.* There is a requirement that reasonable services be offered to preserve the family unit. *In re L.M.W.,* 518 N.W.2d 804, 807 (Iowa App.1994); *In re A.L.,* 492 N.W.2d

198, 201 (Iowa App.1992); *In re B.L.*, 491 N.W.2d 789, 791–93 (Iowa App.1992); *In re M.D.S.*, 488 N.W.2d 715 (Iowa App.1992); *In re A.W.*, 464 N.W.2d 475, 478 (Iowa App. 1990).

Patty admits she was not initially amenable to the services provided; but advances she maintained regular visits with the children until she moved to Missouri where she requested a home study and there was a recommendation for Iowa to utilize the Interstate Compact but it was never done.

Patty elected to move to the state of Missouri. The record reveals no compelling reason why it was necessary for her to do so. There is no evidence Patty made any specific requests for services before her move. Preserving families is the underlying principle behind these proceedings. *In re C.D.*, 508 N.W.2d 97, 100 (Iowa App.1993). A parent's challenge to services should be made when they are offered. *Id.* at 101. It is indeed discouraging when money is spent on services that do not correct problems. *Id.*

**AFFIRMED.**