**IN THE COURT OF APPEALS OF IOWA**

No. 25-0252
Filed June 18, 2025

**IN THE INTEREST OF T.M., T.M. and T.M.,**
**Minor Children,**

**B.B., Mother,**
　　　　Appellant.
_____

　　　　Appeal from the Iowa District Court for Polk County, Kimberly Ayotte, Judge.


　　　　A mother appeals the termination of her parental rights.  **AFFIRMED.**


　　　　Barbara Davis, West Des Moines, for appellant mother.

　　　　Brenna Bird, Attorney General, and Natalie Hedberg, Assistant Attorney General, for appellee State.

　　　　Tonya Ann Oetken of Oetken Law Firm, Inc., Ankeny, attorney and guardian ad litem.


　　　　Considered without oral argument by Greer, P.J., and Badding and Chicchelly, JJ.

**BADDING, Judge.**

The Iowa Department of Health and Human Services provided the mother with more than two years of services aimed at addressing her physical abuse of one of her children, a domestically violent relationship with the father, substance use, and mental health. When those services were unsuccessful in reunifying the mother with her three children—born in 2014, 2017, and 2018—the juvenile court terminated her parental rights.[1] The mother appeals, challenging each of the three steps in our termination analysis. *See* Iowa Code § 232.116(1)–(3) (2025); *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022). We affirm upon our de novo review of the record. *L.B.*, 970 N.W.2d at 313.

Beginning with the first step in our analysis, although the mother's rights were terminated under both section 232.116(1)(e) and (f), she only challenges the latter ground. When the juvenile court terminates under multiple statutory grounds, we may affirm on any ground on which the juvenile court relied. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). Because the mother failed to challenge the termination of her parental rights under paragraph "e," she has waived any claim of error on that ground. *See In re A.S.*, No. 23-1625, 2023 WL 8449568, at *1 (Iowa Ct. App. Dec. 6, 2023) (collecting cases).[2] Accordingly, we affirm the termination of her parental rights Iowa Code section 232.116(1)(e).

---

[1] The juvenile court terminated the father's parental rights in a previous order. He is not involved in this appeal.

[2] In any event, we find upon our de novo review of the record that the State proved by clear and convincing evidence that termination was appropriate under paragraph "f" because the children could not be safely returned to the mother's custody at the termination hearing. *See* Iowa Code § 232.116(1)(f)(4) (requiring proof "that at the present time the child cannot be returned to the custody of the child's parents as provided in section 232.102"); *In re A.S.*, 906 N.W.2d 467, 473

The second step in our analysis considers whether termination is in the children's best interests. *See* Iowa Code § 232.116(2). Under a best-interests issue heading, the mother claims termination "would be detrimental to the children" because of the bond that she shares with them.[3] She also mentions that the "children are in placements that are not guaranteed long-term" and that she "has shown she can maintain housing."

When making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *Id.* While a "child's mental and emotional condition and needs is inherently impacted by the child's bond with a parent," the strength of the parent-child bond here is questionable. *See In re L.A.*, ____ N.W.3d ____, ____, 2025 WL 855764, at *3 (Iowa Ct. App. 2025). The mother's visitation with the children throughout these proceedings was inconsistent. Some of that was due to the distance between her residences and the children's placements. But even when the mother was offered gas cards or virtual visits, her contact with the children remained irregular. And during the virtual visits, the children were often disengaged, leading the court-appointed special advocate to observe there was a "weak parental bond." While we do not doubt the mother's love for her children, her bond with them does not outweigh the children's

---

(Iowa 2018) (interpreting "at the present time" to mean the date of the termination hearing).

[3] While this argument could be analyzed separately as a permissive-exception claim under section 232.116(3), we choose to address it under step two of our framework, as the mother does in her petition on appeal. *See In re L.A.*, ____ N.W.3d ____, ____, 2025 WL 855764, at *3 n.2 (Iowa Ct. App. 2025).

need for a safe and stable home. *See In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011) (identifying the "defining elements in a child's best interests" as the child's "safety and his or her need for a permanent home" (citation omitted)).

We recognize that at the termination hearing, the children's future homes were in flux. The oldest had just been moved to a foster care placement after living in a shelter for one year, while the younger two children had been moved to a shelter after their foster care placement ended. But the department's case manager was hopeful, noting that the oldest child's placement was open to adoption and that a new foster family had been found for the other two children. In explaining why she thought termination was in the children's best interests, the case manager testified that the mother has not

> demonstrated an ability to provide for their needs. I think she's still learning to provide for her own needs long term. And these boys, although . . . two are still in shelter, we have and are working very closely with a preadoptive foster home that already has seen the boys more in the last few weeks than [the mother] has in the last few months and is working to engage and build that relationship.

"We must reasonably limit the time for parents to be in a position to assume care of their children because patience with parents can soon translate into intolerable hardship for the children*." In re E.K.*, 568 N.W.2d 829, 831 (Iowa Ct. App. 1997). By the termination hearing, the mother—who had been involved with the department off and on since 2015—had already been granted one extension in this case. Yet she was still unable to resume care of the children. *See In re P.L.*, 778 N.W.2d 33, 41 (Iowa 2010) ("It is well-settled law that we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."). Although the mother was

sober from marijuana, cocaine, and alcohol after years of use, she was living with her mother, who was not sober and refused to drug test for the department. The mother had also recently switched therapists and was still working on her mental health. And she was not engaged with therapy for the children, who all displayed significant behaviors that the mother was unsuccessful in addressing. So even though adoptive homes had not yet been secured for the children, we agree that terminating the mother's parental rights was in their best interests. *See In re H.H.*, 528 N.W.2d 675, 677 (Iowa Ct. App. 1995) (concluding that even if the children remained in long-term foster care, they would be better served there than by allowing the mother's parental rights to remain intact); *In re J.R.*, No. 23-0317, 2023 WL 3612385, at *4 (Iowa Ct. App. May 24, 2023) ("While we agree it would be better if the department had a concurrent placement plan for [the child], we still think termination of the mother's rights better serves [the child]'s best interests than not given her inability to make sustained progress and repeated regression. . . .").

Lastly, on the third step of the analysis, the mother asks us to apply the permissive exception under Iowa Code section 232.116(3)(b), which allows the court to avoid termination if "[t]he child is over ten years of age and objects to the termination." Whether to apply this exception is a matter for the court's discretion "based on the unique circumstances of each case and the best interests of the child." *A.S.*, 906 N.W.2d at 474 (citation omitted). The attorney for the oldest child, who was ten years old at the termination hearing, told the court he objected to termination: "[H]e wants to be returned home. He does believe that his mother is trying and does believe that if the Court were to return him there that he could be safe." While the child was not "*over* ten years of age," as required by

section 232.116(3)(b) (emphasis added),[4] we do not ignore his wishes. *See In re A.D.*, No. 20-1182, 2020 WL 7022391, at *3 n.6 (Iowa Ct. App. Nov. 30, 2020) (considering objections of both children, even though one was not over the age of ten). But those wishes are not controlling. *Id.* After placing the child's objection "in the context of the mother's inability or unwillingness to make changes over a substantial period of time," the juvenile court declined to apply this exception to avoid termination. We agree with that decision under this record. *See In re J.S.*, No. 16-0112, 2016 WL 899857, at *3 (Iowa Ct. App. Mar. 9, 2016) (recognizing that a child's yearning for reunification does not always "tilt the balance away from termination").

We affirm the juvenile court's order terminating the mother's parental rights.

**AFFIRMED.**

Chicchelly, J., concurs; Greer, P.J., specially concurs.

---

[4] "As we have noted before, the statute does not include children age ten and over; it specifically states '*over* ten years of age,' which we understand to mean at least eleven years old." *In re A.P.*, No. 21-0059, 2021 WL 1662298, at *3 n.5 (Iowa Ct. App. Apr. 28, 2021) (quoting Iowa Code § 232.116(3)(b)).

**GREER, Judge** (specially concurring).

I write not to find fault with the well-written majority opinion, which I join, or the well-thought-out decision of the juvenile court, but to express the frustration both the court and the participants, including the Iowa Department of Health and Human Services, must feel. So many times we read about the barriers our Iowa parents face in the midst of a child-in-need-of-assistance proceeding. In this case, it is compelling that the placement options (in Sioux City) were almost three hours from the mother when she resided in Des Moines and over five hours from the mother when she resided in Davenport; this distance occurred when proceedings were pending and best efforts were being made to reunite the family. It seems to me that the drought of placement options for children works against the reasonable-efforts obligation our legislature requires in trying to reunite endangered families. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (discussing the genesis and policy behind Iowa's scheme of reasonable efforts). How can that much distance between parent and child not impact the mental health of each, thus disrupting efforts to improve the outcomes?