**IN THE COURT OF APPEALS OF IOWA**

No. 25-1350
Filed October 29, 2025

**IN THE INTEREST OF G.H. and K.K.,**
**Minor Children,**

**J.K., Father,**
        Appellant.
_____

Appeal from the Iowa District Court for Wapello County, Richelle Mahaffey, Judge.

A father appeals the juvenile court's order terminating his parental rights to two children. **AFFIRMED.**

Michael S. Fisher of Fisher Law Office, New Sharon, for appellant father.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, for appellee State.

Samuel K. Erhardt, Ottumwa, attorney and guardian ad litem for minor children.

Considered without oral argument by Schumacher, P.J., and Badding and Langholz, JJ.

**BADDING, Judge.**

Two children, born in 2017 and 2018, came to the attention of the Iowa Department of Health and Human Services after they were found alone in a gas station before dawn. Following additional reports of neglect, case workers visited the father's home, which was in disarray. The father disclosed that he had recently relapsed on methamphetamine, a drug he has struggled with since he was ten years old.

The children were removed from the father's custody in May 2024 and adjudicated in need of assistance the following month. Over the next year, the father lost his housing, cycled in and out of jail, and continued to use methamphetamine. When it came time for a hearing on the State's petition to terminate his parental rights, the father was back in jail. The juvenile court terminated the father's parental rights under Iowa Code section 232.116(1)(d), (e), (f), (g), (i), and (*l*) (2025).[1] The father appeals that decision. Our review is de novo. *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).

We generally apply a three-step analysis when reviewing the termination of parental rights. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). But because the father challenges neither the statutory grounds for termination nor whether a permissive exception should be applied, we need not consider those steps.[2] *Id.*

---

[1] By the same order, the juvenile court also terminated the parental rights of the children's mother under Iowa Code section 232.116(1)(b), among other grounds. The mother does not appeal, so we do not mention her further.

[2] To be sure, the father contends that due to his "lifetime bond with the children," termination "is far more detrimental" than the risks they face in his care. Although this language tracks the parent-child bond exception in Iowa Code section 232.116(3)(c), the father only makes the argument under the best-interest analysis in section 232.116(2). Following the father's lead, we consider this

The only question before us is whether terminating the father's rights serves the best interests of the children when considering their present and future safety, their long-term growth, and their physical, mental, and emotional needs. Iowa Code § 232.116(2).

This is not the first time the department has been involved in the lives of these children. A pair of previous child-welfare cases closed in 2020 through bridge orders that placed the children in the father's custody. The father was able to meet the children's needs while sharing a home with his now-estranged wife. He recounted at the hearing: "I spent most of my time sleeping and working, and she spent most of the time with the kids." But things fell apart when the wife moved out. The father lost his job and relapsed on methamphetamine after six years of sobriety. The children began arriving at school with dirty clothes and empty stomachs. Sometimes, the older child would sleep all day. The department later learned that the father had stopped taking the child to his medication-management appointments.

Both children have significant behavioral needs, which has made foster placement challenging. G.H. was placed in six different foster homes in the fourteen months following removal. For K.K., it was ten. At the termination hearing, they were still in separate short-term foster settings, neither of which was pre-adoptive. A relative had recently stepped forward as a potential long-term placement, but he was not willing to take the children unless the father's parental

---

argument within the best-interests framework. *See In re L.A.*, 20 N.W.3d 529, 535 (Iowa Ct. App. 2025) ("[T]he parent-child bond is a relevant consideration in the best-interests analysis.").

4

rights were terminated. Given this uncertain future, the father argues that terminating his parental rights is not in the children's best interests.

"We cannot assume termination guarantees adoption." *See In re H.H.*, 528 N.W.2d 675, 677 (Iowa Ct. App. 1995). Still, in some cases, terminating a parent's rights rather than leaving them intact is the better path toward permanency. *See, e.g.*, *In re T.M.*, No. 25-0252, 2025 WL 1706566, at *2 (Iowa Ct. App. June 18, 2025) (finding termination of a parent's rights to three children was in their best interests "even though adoptive homes had not yet been secured"); *In re J.R.*, No. 23-0317, 2023 WL 3612385, at *4 (Iowa Ct. App. May 24, 2023) ("While we agree it would be better if the department had a concurrent placement plan for [the child], we still think termination of the mother's rights better serves [the child]'s best interests than not given her inability to make sustained progress . . . ."). The juvenile court determined that was the case here, finding:

> [The children] are six and seven respectively. The Court heard repeatedly through testimony about their challenging behaviors. They each have been through an alarming number of placements. It is heartbreaking. [The children] each need and deserve a safe, stable, and long-term, loving home. . . .
> . . . .
> . . . [The children's] continued exposure to [the father's] behavior is harmful to them. His presence in their life has been inconsistent, which is emotionally detrimental. His behavior has been aggressive and violent. His methamphetamine use disorder is untreated. His mental health issues are numerous and severe. Severing parental ties between [the father] and the children will open familial connections and resources that increase the likelihood of a long-term relative or fictive kin placement. . . .

We agree. These children had neither safety nor stability at the time of their removal, and the father has failed to make the necessary changes to recover from his backslide into addiction. By his own estimation, he would need at least "three

or four months" after his release from custody before he could care for the children again. We decline to make them wait. *See In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (explaining "we cannot deprive a child of permanency . . . by hoping someday a parent will learn to be a parent and be able to provide a stable home"). Despite the present uncertainty surrounding the children's long-term care, the State has proved by clear and convincing evidence that termination is in their best interests.

**AFFIRMED.**